FROST NATIONAL BANK, Former Executor of the Estate of Elena Suess Kenedy, Deceased, and Frost National Bank and Pablo Suess, Trustees of the John G. Kenedy, Jr. Charitable Trust, Petitioners,

v.

Ann M. FERNANDEZ, Respondent.

No. 08–0534.

Supreme Court of Texas.

Argued Dec. 15, 2009.

Decided April 16, 2010.

Rehearing Denied Aug. 20, 2010.

J.A. (Tony) Canales, Tara Leigh Adami, Canales & Simonson, P.C., Corpus Christi, Stephen Jody Helman, Jeffrey T. Knebel, Osborne & Helman, L.L.P., Austin, Jacqueline M. Stroh, Thomas H. Crofts Jr., Crofts & Callaway, P.C., San Antonio, TX, for Petitioners.

Eric G. Walraven, Underwood, Perkins & Ralston, P.C., Marcos G. Ronquillo, Shawn Malcolm McCaskill, Christie Marie Villareal, Godwin Pappas Langley Ronquillo LLP, Julia F. Pendery, Dallas, Michele Anne Mobley, Dubois, Bryant, & Campbell, LLP, Austin, TX, for Respondent.

John Sjoberg, Jackson, Sjoberg, McCarthy & Wilson, LLP, Shannon H. Ratliff, Marla Diane Broaddus, Ratliff Law Firm, P.L.L.C., Austin, TX, for Humble Oil & Refining Company.

Justice GREEN delivered the opinion of the Court.

Believing herself to be the non-marital child of John G. Kenedy, Jr., Ann M. Fernandez has initiated multiple proceedings in both district court and statutory probate court to set aside decades-old judgments and reopen the estates of Kenedy, his wife, and his sister, and to declare Fernandez an heir to those estates. The defendants filed motions for summary judgment in the district court arguing numerous grounds, including that because Fernandez's heirship claim was barred by limitations, she could not establish an interest in the estates and could not pursue bills of review. The district court granted summary judgment against Fernandez in a broadly-worded order that did not specify the grounds. The principal issue on appeal is whether the district court had jurisdiction to render summary judgment when similar bill of review proceedings and applications

for determination of heirship were pending in the probate court. The court of appeals held that the district court lacked subject matter jurisdiction and was required to abate its proceedings until the probate court first resolved questions of heirship. We disagree. Fernandez's pleadings and her direct attack on a previous judgment vested the district court with subject matter jurisdiction. Moreover, the Texas Probate Code does not authorize a probate court to exercise jurisdiction over heirship claims when an estate has been closed for decades and the decedent did not die intestate. We therefore reverse those parts of the court of appeals' judgment that relate to jurisdiction and abatement. Further, we hold that the discovery rule does not apply to inheritance or heirship claims by non-marital children, or bill of review claims to set aside probate judgments. Because Fernandez's claims were barred by the applicable statute of limitations, we render judgment reinstating the district court's judgment. In light of today's ruling, we conclude that none of Fernandez's claims for heirship or inheritance rights to the Kenedy estate remain viable, so we affirm the portion of the court of appeals' judgment that set aside the district court's anti-suit injunction.

## I. Facts and Procedural Background

John G. Kenedy, Jr., died in 1948. In his holographic will, Kenedy left all his "property of every character and d[e]scription both personal and mixed" to his wife, Elena Suess Kenedy. After Kenedy's will was probated in the County Court of Kenedy County, Humble Oil & Refining Company, which leased mineral interests that were part of Kenedy's estate, brought a will construction suit in district court to resolve a potential ambiguity regarding whether Kenedy's will disposed of all Kenedy's real property (the *Humble Oil* suit). On October 12, 1949,[1] the district court found that all of Kenedy's heirs were before it and held that the will did not leave an intestacy but instead passed his interest in any property to his wife. The judgment states that "as a matter of law" Kenedy was survived by no children and that "all persons who would have inherited any part of the Estate of John G. Kenedy, Jr., deceased, if he had died intestate as to all or any part of his estate, are parties to this suit and therefore all necessary and interested parties are included among the defendants herein." Kenedy's estate was distributed, taxed, and closed in 1952.[2]

Sarita Kenedy East, Kenedy's sister, died in 1961. East's 1960 will and codicils, which left the bulk of East's estate to The John G. and Marie Stella Kenedy Memorial Foundation and contained a residual clause leaving any remaining property to the Foundation, were admitted to probate later in 1961. After extensive litigation (the *Trevino* will contest), the district court dismissed several contests to the 1960 will and codicils. *See Trevino v. Turcotte*, 564 S.W.2d 682, 690 (Tex.1978). As a part of that litigation, the district court entered a final judgment in 1975 pursuant to a settlement agreement as to some of

---

1. The specific dates and sequence of events are generally not significant to the outcome of this case. We include them for purposes of organizing the complicated relevant procedural events, and to refer to certain specific orders entered by the various trial courts.

2. In 1949, the probate court "ordered that the proceedings in [Kenedy's] Estate, in so far as the administration of this estate is concerned, be, and they are hereby closed, save and except as to such proceedings as are required in determining and fixing the Inheritance Tax, if any, due upon said Estate." Although the court signed an order fixing inheritance tax in 1952, it does not appear from the record that the court subsequently issued any other orders relating to Kenedy's estate.

the parties contesting East's 1960 will. We later affirmed the district court's dismissal judgment, *id.*, and the district court then transferred the *Trevino* will contest back to the County Court of Kenedy County for a final accounting of East's estate in 1986. The county court closed East's estate in 1987.

Apart from the contests to East's will, a temporary administrator of her estate had also filed an action to set aside certain *inter vivos* mineral royalty assignments East had made to the Foundation (the *Garcia* suit). The district court abated this action in 1964, after the Foundation argued that it would own the property at issue under East's will regardless of the status of the *inter vivos* transfers, if the *Trevino* will contest failed. After our opinion in *Trevino*, in September 1978 the district court dismissed the *Garcia* suit with prejudice.

Mrs. Kenedy passed away in 1984, leaving a will that bequeathed most of her estate to The John G. Kenedy, Jr. Charitable Trust.[3] That will was probated in 1984, the estate was closed in late 1987, and Mrs. Kenedy's interest in the real property at issue was distributed to the Trust. The La Parra Ranch, which was among Kenedy's real property assets that passed to Mrs. Kenedy, was the primary trust asset.[4]

Fernandez was born in 1925 to Maria Rowland, who was then unmarried and worked for the Kenedy family.[5] For years, Fernandez heard rumors and speculation that Kenedy was her father. Fernandez alleges that on Mother's Day of 2000, shortly before her death, Rowland revealed Kenedy's paternity when she told Fernandez's son, Dr. Ray Fernandez, that he bore a resemblance to his grandfather, Kenedy. Fernandez then began engaging in litigation to assert her putative right to inherit from the estates of Kenedy, his wife, and East.[6]

Fernandez filed multiple lawsuits contesting court orders and probate proceedings relating to those estates, and she seeks to reopen the estates and set aside distributions of real and personal property that were made decades ago in those probate proceedings. Fernandez, who did not receive notice of the suits pertaining the estates of Kenedy, his wife, and East, contends that she should have been a party to those suits, that the judgments in those cases are not binding and should be set aside, and that she is entitled to her intestate share. We discuss the relevant underlying proceedings and filings generally in chronological order.

In October 2001, Fernandez filed her initial suit, a bill of review in the County Court of Kenedy County seeking to set aside the order probating Kenedy's will, to reopen Kenedy's estate, and to be declared Kenedy's heir.[7] In May 2002, she filed

---

3. We refer to the petitioners in this case collectively as the Trust.

4. Kenedy owned approximately 200,000 acres of the La Parra Ranch at his death, and his sister, Sarita Kenedy East, owned the other half.

5. Rowland married Desiderio Peña during Fernandez's childhood, and later married Tom Goates when Fernandez was in her twenties.

6. In 2002, the County Court at Law No. 5 of Nueces County appointed Dr. Fernandez to serve as guardian of his mother's estate. It appears that he is now prosecuting the litigation on Fernandez's behalf.

7. We describe this as a bill of review, since in substance this is what it was, although Fernandez did not style it as such, instead calling it an "application to set aside order probating will with application for declaration and determination of heirship." Fernandez's later

another bill of review and application for declaration of heirship in Kenedy's estate in the County Court of Kenedy County. She filed additional bill of review proceedings in the County Court of Kenedy County relating to Mrs. Kenedy's estate and East's estate, also seeking a declaration of heirship for these estates.

Fernandez filed three petitions for bill of review in the district court for Kenedy County and Nueces County, seeking to set aside the *Humble Oil, Trevino*, and *Garcia* judgments. The district court judgments in those bill of review cases are the subject of appeals currently before us. In May 2002, Fernandez filed the first of these bills of review in the 105th District Court of Nueces County relating to the *Trevino* will contest (*Trevino* bill of review).[8] This suit also sought an accounting and distribution of property including the mineral interests in the land once held by the Kenedys and East.

On June 28, 2002, Judge Guy Herman was appointed to be the statutory probate judge over the above-referenced County Court of Kenedy County matters.[9] On November 5, 2002, citing section 5B of the Texas Probate Code, Judge Herman trans-ferred to himself and consolidated all of the four cases then pending in county court.[10] In the same orders, Judge Herman also purported to transfer to himself the cases then pending in district court, including the *Trevino* bill of review.[11]

Then, in May 2003, Fernandez filed in district court the other two bills of review that are now the subject of pending appeals. Fernandez initiated the underlying proceedings in the 105th District Court of Kenedy County with a bill of review to set aside the 1949 judgment from the *Humble Oil* will contest suit, arguing that she should have been notified of and made a party to the decades-earlier *Humble Oil* proceeding (*Humble Oil* bill of review).[12] She also filed a bill of review in the 105th District Court of Nueces County, seeking to set aside the 1978 East dismissal order, claiming that, as East's heir, she should have been notified of and made a party to the *Garcia* royalty suit (*Garcia* bill of review).[13]

In August 2003, Fernandez moved to abate the three district court bill of review cases, and for Judge Herman to transfer the remaining district court cases to him-

filings in these probate cases were expressly referred to as bills of review.

8. On appeal here as 08–0528, *The John G. & Marie Stella Kenedy Mem'l Found. v. Fernandez*.

9. The appointment order stated that Judge Herman would hold all rights, powers, and privileges held by the regular judge of the court and the attendant jurisdiction of a statutory probate court. *See* Tex. Gov't Code § 25.0022.

10. The cases were consolidated into cause no. 395, in which Fernandez then sought a determination of heirship and her share of an interest in intestate property.

11. Along with the *Trevino* bill of review, Fernandez had filed a "petition with application for temporary restraining order," in *Fernandez v. Exxon Mobil Corp.*, No. 02–2331–C (97th Dist. Ct., Nueces County), alleging that Humble Oil & Refining Company had become known as Exxon/Mobil. That particular suit is not before us on appeal.

12. This bill of review proceeding gave rise to the instant appeal. Originally, the *Humble Oil* suit had been cause no. 35 in the 28th District Court of Kenedy County. According to the Trust, the 105th District Court became the successor to the 28th District Court of Kenedy County on or about September 1, 1985.

13. On appeal here as 08–0529, *The John G. & Marie Stella Kenedy Mem'l Found. v. Fernandez*.

self.[14] The Foundation and Trust filed pleas to the jurisdiction challenging the probate court's jurisdiction to transfer the bill of review cases from the district court. *See In re The John G. & Marie Stella Kenedy Mem'l Found.*, 159 S.W.3d 133, 139 (Tex.App.-Corpus Christi 2004, orig. proceeding). On August 27, 2003, Judge Herman denied the pleas to the jurisdiction, *id.*, and signed a second order purportedly transferring and consolidating the *Humble Oil* and *Garcia* bill of review district court causes of action into the cause number assigned to the related cases. At this point, all three district court bill of review cases were purportedly transferred and consolidated by Judge Herman.

On petition for writ of mandamus, the court of appeals held that because there was no estate pending in the probate court, Judge Herman lacked authority under section 5B of the Texas Probate Code to transfer the bill of review proceedings that were originally filed in district court. *Id.* at 146. The court of appeals directed Judge Herman to vacate his transfer orders relating to the three district court bills of review, *id.*, but the record does not show that this has yet happened.[15]

While that mandamus case was pending in the court of appeals, Fernandez sought to exhume Kenedy's remains pursuant to section 711.004 of the Texas Health and Safety Code. On June 18, 2004, two days after the court of appeals issued its mandamus ruling, Judge Herman concluded that he had jurisdiction to consider the exhumation motion. He then granted the motion to exhume to allow DNA testing to determine if Kenedy is Fernandez's biological father. After proceedings in the court of appeals and a hearing before Judge Herman, an exhumation date was set for July 10, 2004. *See In re Frost Nat'l Bank*, 2004 WL 1505527, at *1 (Tex.App.-Corpus Christi July 6, 2004, orig. proceeding) (per curiam) (denying petition for writ of mandamus seeking protection from the exhumation order). The Foundation and Trust filed petitions for writ of mandamus in this Court,[16] and we stayed the exhumation order.[17]

In January 2006, while the exhumation mandamus cases were pending in this Court, the Trust and Foundation moved for summary judgment in the *Trevino* and *Humble Oil* bill of review cases in district court.[18] The Foundation also moved for

---

14. Fernandez first moved to abate the *Humble Oil* and *Garcia* bills of review in May 2003 so that Judge Herman could transfer the cases to himself. With regard to the *Trevino* bill of review, Judge Herman had already purported to transfer the case to himself. Later, in August 2003, Fernandez also moved to abate the *Trevino* bill of review, asserting that, "to the extent [the district court] retains the case," the court should stop its proceedings to let Judge Herman proceed.

15. No original proceeding was filed in this Court concerning whether Judge Herman abused his discretion by ordering a transfer from district court, as the court of appeals found.

16. *In re The John G. & Marie Stella Kenedy Mem'l Found.*, 04–0607; *In re Frost Nat'l Bank*, 04–0608.

17. On February 25, 2008, we abated those exhumation mandamus cases pending resolution of the underlying appeal and two related appeals. *See* 267 S.W.3d 75, 79 n. 4 (Tex. App.-Corpus Christi 2008, pet. granted); 51 Tex. Sup.Ct. J. 446 (Feb. 15, 2008). We lifted our abatement after the court of appeals issued its opinions and judgments concerning the district court's summary judgments and anti-suit injunctions. *See* 51 Tex. Sup.Ct. J. 1407 (Sept. 26, 2008).

18. The Foundation sought summary judgment in the *Trevino* proceeding, and the Trust sought summary judgment in the *Humble Oil* proceeding.

summary judgment in the *Garcia* bill of review case in May 2006. The motions presented various grounds for summary judgment, including Fernandez's lack of standing to pursue the bills of review and expiration of the applicable limitations period, both for an heirship determination and for the bill of review itself. Among other things, the Trust and Foundation argued that these bars precluded Fernandez from establishing a right to inherit from Kenedy or East, such that Fernandez could not establish a meritorious claim warranting a bill of review.

Meanwhile, the Foundation also filed an emergency application for temporary restraining order and a request for a permanent injunction in the *Trevino* and *Garcia* bills of review cases, and the Trust made similar filings in the *Humble Oil* bill of review case. The Trust and Foundation argued that Fernandez's filings in probate court were a continuing attempt to circumvent the district court's jurisdiction. The district court issued a temporary restraining order prohibiting Fernandez from proceeding with a motion she had filed in probate court, which sought to reopen Kenedy's estate and to have the bill of review proceedings transferred to the probate court and abated in the district court. Fernandez did not seek appellate court relief from that order.

The action in the district court proceeded. In March 2006, in the *Humble Oil* and *Trevino* bills of review, the district court denied Fernandez's motion to abate and denied a motion to transfer. Finally, on March 27, 2006, the district court rendered summary judgment for the Trust and Foundation without specifying the grounds in the *Trevino* and *Humble Oil* bill of review cases.

On April 12, 2006, the district court issued permanent anti-suit injunctions in those two cases, enjoining Fernandez from taking actions inconsistent with the district court's judgment in the probate court or any other court, including any attempt to reopen the estates, establish a right to inherit from the estates, set aside the wills, or recover an interest in property distributed from the estates. The district court issued an order on April 25, 2006 that incorporated both the March 27 summary judgment and the April 12 injunctive relief. Fernandez appealed both the summary judgment and the anti-suit injunction in those two cases.

The district court also rendered summary judgment for the Foundation in the *Garcia* bill of review case on June 22, 2006.[19] The same day, as it had in the other two cases, the district court issued a permanent anti-suit injunction in this case. Fernandez appealed only the anti-suit injunction in the *Garcia* bill of review case.

Turning to the *Humble Oil* bill of review, the instant case before us, the court of appeals reversed, concluding that the probate court had dominant jurisdiction over the question of Fernandez's heirship and whether she had an interest in Kenedy's estate. 267 S.W.3d 75, 81–82 (Tex. App.-Corpus Christi 2008, pet. granted). Holding that abatement was required, the court remanded the case to the district court with instructions to abate the petition until the probate court resolves Fernandez's heirship application. *Id.* at 85. The court of appeals also reversed the anti-suit injunction and rendered judgment against the Trust on its request for injunc-

---

**19.** The district court never ruled on Fernandez's motion to abate in the *Garcia* bill of review, or seemed to acknowledge Fernandez's attempts to transfer the case to Judge Herman. Its final summary judgment order stated categorically that all relief requested by Fernandez is denied.

tive relief. *Id.* The Trust appealed, and we granted the petition for review. 53 Tex. Sup.Ct. J. 15 (Oct. 23, 2009).

On the *Trevino* bill of review, the court of appeals also reversed, again concluding that the probate court had dominant jurisdiction and remanding to the district court for abatement. *Fernandez v. The John G. & Marie Stella Kenedy Mem'l Found.*, 315 S.W.3d 542, 544 (Tex.App.-Corpus Christi 2008, pet. granted) (mem. op.). As in *Humble Oil,* the court of appeals reversed the anti-suit injunction and rendered judgment against the Foundation on its request for injunctive relief. *Id.* at 545. The Foundation appealed, and we granted that petition for review. 53 Tex. Sup.Ct. J. 15 (Oct. 23, 2009).

On the *Garcia* bill of review, the court of appeals again reversed, this time concluding only that the district court acted improperly by entering an anti-suit injunction. *Fernandez v. The John G. & Marie Stella Kenedy Found.*, 315 S.W.3d 542, 544 (Tex.App.-Corpus Christi 2008, pet. granted) (mem. op.). Because Fernandez did not appeal the summary judgment in this case, the court of appeals did not remand the case. Instead, the court of appeals reversed the anti-suit injunction and rendered judgment against the Foundation on its request for injunctive relief. *Id.* at 545. The Foundation appealed, and we granted that petition for review. 53 Tex. Sup.Ct. J. 15 (Oct. 23, 2009).

## II. Summary Judgment

▇▇▇ The Trust first argues that the district court had subject matter jurisdiction to render judgment that Fernandez take nothing in her bill of review suit, and that the court of appeals erroneously held that the district court must abate its bill of review proceedings to allow the probate court to determine heirship. "Whether a court has subject matter jurisdiction is a

question of law." *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004) (citing *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002)). "Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo.*" *Id.*

### A. Jurisdiction

### 1. Fernandez's Pleadings

▇▇▇ The Trust contends that Fernandez's pleading of facts supportive of standing vested the district court with subject matter jurisdiction over the *Humble Oil* bill of review case. We agree. Inherent in a court's jurisdiction is the authority to determine whether it can exercise subject matter jurisdiction over the case, including determining standing. *See Houston Mun. Employees Pension Sys. v. Ferrell,* 248 S.W.3d 151, 158 (Tex.2007); *Camacho v. Samaniego,* 831 S.W.2d 804, 809 (Tex. 1992). Standing, which focuses on who may bring an action, is a prerequisite to subject matter jurisdiction. *M.D. Anderson Cancer Ctr. v. Novak,* 52 S.W.3d 704, 708 (Tex.2001). To have standing to pursue a bill of review, a person generally must have been a party to the prior judgment or have had a then-existing interest or right that was prejudiced by the prior judgment. *See, e.g., Rodriguez ex rel. Rodriguez v. EMC Mortg. Corp.,* 94 S.W.3d 795, 798 (Tex.App.-San Antonio 2002, no pet.); *Lerma v. Bustillos,* 720 S.W.2d 204, 205–06 (Tex.App.-San Antonio 1986, no writ). Fernandez contends that, because of her biological relationship to Kenedy, she has an interest in the Kenedy estate that was prejudiced by the 1949 *Humble Oil* judgment.

▇▇▇ It has long been the rule that a plaintiff's good faith allegations are used to

determine the trial court's jurisdiction. *See, e.g., Brannon v. Pac. Employers Ins. Co.,* 148 Tex. 289, 224 S.W.2d 466, 469 (1949). A court may presume the truth of allegations supportive of standing to determine standing and dispose of litigation through summary judgment. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993) ("[W]hen a Texas appellate court reviews the standing of a party sua sponte, it must construe the petition in favor of the party...."); *Brown v. Todd,* 53 S.W.3d 297, 305 n. 3 (Tex.2001) ("Because standing is a component of subject matter jurisdiction, we consider [it] as we would a plea to the jurisdiction, construing the pleadings in favor of the plaintiff."); *see also Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 660 (Tex.1995) (assuming that petitioner had standing to affirm summary judgment against petitioner); *O'Quinn v. State Bar of Tex.,* 763 S.W.2d 397, 403 (Tex.1988) (assuming that party had standing to decide that challenge lacked merit). In this case, Fernandez pled in her bill of review petition in district court that she is Kenedy's non-marital child and, because of that relationship, she is entitled to an intestate inheritance if the district court's 1949 judgment negating intestacy is set aside. For purposes of determining standing, then, the district court could presume that Fernandez is, as she alleges, Kenedy's biological child. The Trust favors such an assumption, and Fernandez, who is hardly in a position to challenge it, made no objection on this basis.[20] We reject Fernandez's peculiar argument that the district court should not have assumed her pleaded basis for standing to be true.

The court of appeals believed that employing such a presumption amounts to conferring standing by estoppel. 267 S.W.2d at 81 (citing *Tex. Ass'n of Bus.,* 852 S.W.2d at 443–46). In this case, the Trust did ask the district court to assume paternity for purposes of its summary judgment motion. But, as we have already discussed, Fernandez did not object to that request, and Fernandez's allegations, taken as true, were sufficient to establish standing. We have never said that presuming heirship in these sorts of cases amounts to conferring standing by estoppel or by agreement, or that this situation should depart from the general rule that the plaintiff's good faith allegations are used to determine jurisdiction. We see no reason to alter it now, as such a rule would prevent parties from ever stipulating to facts relating to parentage and would prevent courts from deciding dispositive motions not dependent on parentage (e.g., laches and limitations), without some sort of evidentiary inquiry into heirship claims. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000) (recognizing that plaintiffs do not have to "put on their case simply to establish jurisdiction"). In this case, we conclude that Fernandez's pleadings conferred standing, regardless of

---

**20.** Fernandez also argues that the district court could not assume standing or rule on standing because that issue is currently pending with this Court in the mandamus cases regarding exhumation of Kenedy's body. *See In re The John G. & Marie Stella Kenedy Mem'l Found.,* 04–0607; *In re Frost Nat'l Bank,* 04–0608. She essentially suggests that this Court has exclusive jurisdiction over the standing (and heirship) issue because it is under consideration in the mandamus cases. But that position is inconsistent with her insistence that the probate court has exclusive jurisdiction, and it overstates the question before the Court in the exhumation cases. There, we must determine whether the probate court had authority to order the exhumation of Kenedy's body for DNA testing to determine the issue of Kenedy's paternity. Although the paternity issue may be related to Fernandez's standing to pursue bills of review to reopen the estates, we were not asked in the mandamus cases to decide the issue of Fernandez's standing in the district court.

whether the alleged relationship was true or subject to rebuttal on the merits.

### 2. Direct Attack on 1949 Judgment

■■■ Because Fernandez's claims are a direct attack on the 1949 *Humble Oil* judgment, brought by bill of review, the district court had authority to determine Fernandez's standing to proceed, including whether she can establish heirship. A bill of review is brought as a direct attack on a judgment that is no longer appealable or subject to a motion for new trial. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003). Because it is a direct attack, a bill of review must be brought in the court that rendered the original judgment, and only that court has jurisdiction over the bill. *See, e.g., In re The John G. & Marie Stella Kenedy Mem'l Found., et al.*, 159 S.W.3d 133, 141, 146 (Tex.App.-Corpus Christi 2004, orig. proceeding) (holding that Judge Herman "not only erroneously concluded he had jurisdiction over these matters, but also actively interfered with the jurisdiction of the district courts"); [21] *Richards v. Comm'n for Lawyer Discipline*, 81 S.W.3d 506, 508 (Tex.App.-Houston [1st Dist.] 2002, no pet.) ("Because a bill of review is a direct attack on a judgment, only the court rendering the original judgment has jurisdiction over the proceeding."); *Solomon, Lambert, Roth & Assocs. Inc. v. Kidd*, 904 S.W.2d 896, 900 (Tex.App.-Houston [1st Dist.]

1995, no writ) ("The requirement that a bill of review be filed in the same court that rendered the judgment under attack is a matter of jurisdiction...."); *Martin v. Stein*, 649 S.W.2d 342, 346 (Tex.App.-Fort Worth 1983, writ ref'd n.r.e.) (per curiam) ("A bill of review or a petition in the nature of a bill of review is a proceeding in equity that has for its purpose the reversal or modification of a prior judgment of the same trial court. It is not a means of appeal of a judgment of one trial court to another trial court."); *cf. Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex.1973) ("A direct attack is a proceeding instituted for the purpose of correcting the earlier judgment. It may be brought in the court rendering the judgment or in another court that is authorized to review the judgment on appeal or by writ of error. The purpose of a direct attack is to change the former judgment and secure the entry of a correct judgment in lieu of the earlier incorrect one."). Here, the district court that rendered the 1949 will construction judgment has exclusive jurisdiction over any attack on that judgment by bill of review. *See In re Kenedy Mem'l Found.*, 159 S.W.3d at 143–44, 146 (holding that, because the bill of review cases in the underlying proceedings were properly filed in the courts that rendered the judgments under attack, jurisdiction attached in the district court). It

---

**21.** In its opinion in the instant case, the court of appeals explained the apparent conflict between its earlier mandamus ruling on Judge Herman's transfer order and the underlying holding that "the probate court holds exclusive jurisdiction over the heirship and probate matters at the center of Fernandez's petition for an equitable bill of review." 267 S.W.3d at 82. The court claims that its earlier ruling arose out of an original proceeding involving the limited issue of the probate court's authority to *transfer* the *Humble Oil* case to itself. *Id.* at 83. But the court's first step in analyzing that issue was to determine wheth-

er the bills of review were filed in the proper court, i.e., the court in which the judgment was entered. *In re Kenedy Mem'l Found.*, 159 S.W.3d at 143 ("Here, the three transferred bills of review were originally filed in the courts that rendered the judgments under attack."). The court then went on to hold that a bill of review seeking to reopen an estate closed long ago does not render the estate "pending" as that word is used in section 5B of the Probate Code. *Id.* at 143–46. We do not see the distinction and read the opinions to be inconsistent.

follows that, under the facts of this case, all issues bearing on the validity of Fernandez's attack on that earlier judgment are necessarily resolvable by the district court as part of its determination of the bill of review. When the district court has exclusive jurisdiction over the subject matter of a claim, Fernandez cannot procure relief in the probate court by characterizing the issue as solely one of heirship. *See, e.g., Taylor v. Hill,* 249 S.W.3d 618, 625 (Tex.App.-Austin 2008, pet. denied) (holding that district court had jurisdiction over partition action and rejecting argument that claim requiring determination of heirs' interest must be heard only in probate court); *Trevino v. Lerma,* 486 S.W.2d 199, 200 (Tex.Civ.App.-Beaumont 1972, no writ) (holding that district court had exclusive jurisdiction to hear suit to set aside deed and that claimants "could procure no relief in the probate court under the provisions of § 48 of the Probate Code").

### 3. Probate Code

■ The court of appeals believed that "[t]he real jurisdictional problem plaguing the summary judgment is that it was rendered by a district court that did not have control over the heirship issues that are central to Fernandez's petition." 267 S.W.3d at 81. The court held that whether Fernandez had an interest in Kenedy's and East's estates "is undoubtedly a probate question that must be resolved by the probate court and, in this case, cannot be resolved in the district court." *Id.* at 82. But the only given authority for this conclusion was a footnote in *Palmer v. The Coble Wall Trust Co., Inc.,* 851 S.W.2d 178, 180 n. 3 (Tex.1992), which does not mention exclusive jurisdiction and does not hold that only a county court acting in probate has jurisdiction over heirship claims in the circumstances presented here. The cited footnote primarily addresses counties in which there is a statu-

tory county court or a statutory probate court, *id.,* which is not the case in Kenedy County. However, the footnote does go on to explain:

> To further complicate matters, the district courts exercise some probate jurisdiction. The Probate Code provides that "[t]he district court shall have original control and jurisdiction over executors, administrators, guardians and wards under such regulations as may be prescribed by law." TEX. PROB.CODE § 5(a) (Supp.1992). In those counties where there is no statutory court exercising probate jurisdiction, most probate matters must be filed in the constitutional county court, *id.* § 5(b); however, the county judge may transfer contested matters to the district court, which may then hear them "as if originally filed in district court." *Id.* In this situation the county court retains jurisdiction over the uncontested portions of the case. *Id.* The county judge may also request the assignment of a statutory probate judge to hear contested matters. *Id.*

*Palmer,* 851 S.W.2d at 180 n. 3. Neither section 5(b) of the Probate Code nor the footnote in *Palmer* addresses the situation at hand, which involves attacks on district court judgments in cases where the estates were fully administered and closed decades ago. In fact, the Probate Code does not authorize probate courts to exercise jurisdiction in these circumstances, where a decedent died testate and his or her estate was fully administered and closed.

In counties such as Kenedy with no statutory probate court, county court at law, or other statutory court exercising probate jurisdiction, "all applications, petitions, and motions regarding probate and administrations shall be filed and heard in the county court," except that in contested probate matters, the contested portion can be assigned to a statutory probate court judge

or transferred to district court. TEX. PROB. CODE § 5(b).[22] "All courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate." *Id.* § 5(f). "'[I]ncident to an estate' ... include[s] the probate of wills, the issuance of letters testamentary and of administration, and the determination of heirship, and also include[s], but [is] not limited to, all claims by or against an estate, ... all actions to construe wills, ... and generally all matters relating to the settlement, partition, and distribution of estates of deceased persons." *Id.* § 5A(a). But we have said that a "court empowered with probate jurisdiction may only exercise its probate jurisdiction over matters incident to an estate when a probate proceeding related to such matters is already pending in that court." *Bailey v. Cherokee County Appraisal Dist.*, 862 S.W.2d 581, 585 (Tex.1993); *see* TEX. PROB.CODE § 5A(a), (b). Therefore, the probate court in this case could exercise jurisdiction over Fernandez's heirship claim only if, before Fernandez brought that claim, a probate proceeding was already pending in that court. In this case, there is no open or pending estate in the probate court to which an heirship proceeding would be incident and, thus, the Probate Code does not authorize the probate court's exercise of jurisdiction to determine heirship. *See Schwartz v. Jefferson*, 520 S.W.2d 881, 889 (Tex.1975) ("The mere filing of a bill of review does not affect the finality of the judgment which is sought to be set aside."); *In re Kenedy Mem'l Found.*, 159 S.W.3d at 145 (acknowledging that the estates of Kenedy, his wife, and East "were closed long ago and not reopened by the mere filing of the bills of review," so none of the estates were "pending"). Indeed, if the mere filing of a bill of review or an application for declaration of heirship were to reopen a closed estate and render it "pending" within the meaning of the Probate Code, no estate or probate judgment would ever truly be final because such judgments would always be subject to additional litigation in courts other than those that issued the judgments.

Moreover, section 48 of the Probate Code provides that a proceeding to declare heirship may be filed in the probate court only when a person died intestate as to some or all of his or her property, when a will has been probated or estate administered but real or personal property was omitted, or when there has not been a final disposition. TEX. PROB.CODE § 48(a) (per-

**22.** What is widely referred to—and cited—as the Texas Probate Code is technically still located in the Texas Revised Civil Statutes, having never been codified according to the Legislature's 1963 mandate to the Texas Legislative Council. *See* TEX. GOV'T CODE § 323.007 (calling for "a permanent statutory revision program for the systematic and continuous study of the statutes of this state and for the formal revision of the statutes on a topical or code basis"). It was, however, revised in 2009, in preparation for codification. *See* Act of June 3, 2009, 81st Leg., R.S., ch. 1351, 2009 Tex. Gen. Laws 4273–82. Much of it will be redesignated and codified in the newly-adopted Texas Estates Code, which will not become operative until 2014. *See id.* § 15, 2009 Tex. Gen. Laws 4282. Some former probate provisions will not be codified, however. For example, the 81st Legislature repealed parts of section 5 of the Probate Code, effective in 2009. *See id.* § 12(h), 2009 Tex. Gen. Laws 4279. The jurisdictional provisions of section 5 were effectively replaced by new jurisdictional provisions, located in sections 4A–4H. *See id.* § 12(b), 2009 Tex. Gen. Laws 4275–78. Because these revisions do not affect our analysis in the instant case, we will continue to cite and refer to the relevant previous sections of the Probate Code in this opinion. *See id.* § 12(i), 2009 Tex. Gen. Laws 4279 ("An action filed or proceeding commenced before the effective date of this Act is governed by the law in effect on the date the action was filed or the proceeding was commenced, and the former law is continued in effect for that purpose.").

mitting suit for declaration of heirship "[w]hen a person dies intestate" and "there shall have been no administration in this State upon his estate" or when a will has been probated or an estate administered but property was "omitted from such will or from such administration"); *see id.* § 3(*o* ) (defining "heirs" as "those persons ... who are entitled under the statutes of descent and distribution to the estate of a decedent who dies intestate"). That is not the case here. Because Kenedy left a will that disposed of all his property, as determined by the district court in the *Humble Oil* suit, and because his estate was fully administered and closed, the Probate Code does not authorize the probate court to determine heirship.[23] *See Cogley v. Welch,* 34 S.W.2d 849, 853 (Tex. Comm'n App. 1931, judgm't adopted) (holding that court has "absolutely no authority ... to exercise jurisdiction to declare heirship" when decedent died testate); *McMahan v. Naylor,* 855 S.W.2d 193, 194–95 (Tex.App.-Corpus Christi 1993, writ denied) (recognizing that issue of intestacy should be deter-

mined before heirship); *Guajardo v. Chavana,* 762 S.W.2d 683, 684–85 (Tex.App.-San Antonio 1988, writ denied) (holding that heirship is not justiciable before intestacy is established); *Buckner Orphans Home v. Berry,* 332 S.W.2d 771, 775–76 (Tex.Civ.App.-Dallas 1960, writ ref'd n.r.e.) (holding that putative heirs "would first have to annul the wills left by deceased" before they had "such interest as would entitle them to come into the probate court asking for a declaration of heirship, or claiming rights in the estate as heirs"). Authority to decide Fernandez's heirship claims rests solely with the district court as part of its exclusive jurisdiction over the bills of review.[24]

## B. Abatement

The Trust challenges the court of appeals' holding that the later-filed case—the *Humble Oil* bill of review in the district court—must be abated to allow resolution of the earlier filed applications for declaration of heirship in the probate

23. Fernandez also relies on section 42(b) of the Probate Code, relating to the rights of non-marital children to inherit from their fathers, which states in part:

A person claiming to be a biological child of the decedent, who is not otherwise presumed to be a child of the decedent, or claiming inheritance through a biological child of the decedent, who is not otherwise presumed to be a child of the decedent, may petition the probate court for a determination of right of inheritance.

TEX. PROB.CODE § 42(b). But section 42 was enacted in 1955, years after Kenedy died, and only the statutes in effect at the time of death govern disposition of the estate. *See Dickson v. Simpson,* 807 S.W.2d 726, 727 (Tex.1991). Moreover, as the court of appeals recognized, the predecessor statute to section 42 precluded a non-marital child from inheriting from her father's estate unless the parents subsequently married and the child's father recognized the child as his own. 267 S.W.3d at 81 (citing Act to Regulate the Descent and Distribution of Intestates' Estates approved Jan. 28,

1840, Republic of Texas, First Session of Third Congress, *reprinted in* 2 *H.P.N. Gammel, The Laws of Texas 1822–1897,* at 306–09 (Austin, Gammel Book Co. 1898)); *see Dickson,* 807 S.W.2d at 727. Neither of those circumstances exist here. We therefore reject the contention that section 42(b), or even the previous statute governing inheritance rights of non-marital children, gives the probate court jurisdiction in this case.

24. Fernandez does not seem to dispute that if the district court were to decide her heirship claim, it could do so on the issue on the basis of limitations, without having to determine paternity at the outset. We address the district court's summary judgment below. Additionally, we acknowledge that if it were possible for Fernandez to successfully set aside the 1949 *Humble Oil* judgment and have Kenedy's will construed to effectuate some intestacy, the probate court might then have jurisdiction under section 48 of the Probate Code.

court.[25] 267 S.W.3d at 83. As a general rule, "the court in which suit is first filed acquires dominant jurisdiction to the exclusion of coordinate courts." *Bailey v. Cherokee County Appraisal Dist.*, 862 S.W.2d 581, 586 (Tex.1993). We need not decide whether the general rule of dominant jurisdiction applies in this case, or in cases involving later-filed direct attacks that are exclusively within the jurisdiction of another court, because here Fernandez's claims are not within the jurisdiction of the probate court.[26] *See Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005) (holding that a dominant-servient inquiry was not implicated where the pleadings in the second-filed case could not be equally maintained in the first); *Schuele v. Schuele*, 119 S.W.3d 822, 824 (Tex.App.-San Antonio 2003, no pet.) (holding that the concept of dominant jurisdiction may apply only "when separate suits are filed in courts with concurrent jurisdiction"). Accordingly, we reverse the portion of the court of appeals' judgment remanding the case to the district court for abatement.

## C. Merits

Although the court of appeals did not review the merits of the summary judgment, the Trust asks us to affirm that judgment, noting that the judgment does not involve and could not be affected by resolution of Fernandez's heirship claim. To avoid unnecessary delay, we may consider issues of law rather than remanding them to the court of appeals. *Placencio v. Allied Indus. Int'l, Inc.*, 724 S.W.2d 20, 22 (Tex.1987); *see* Tex.R.App. P. 60.2(c) ("The Supreme Court may ... reverse the lower court's judgment in whole or in part and render the judgment that the lower court should have rendered."). We therefore next consider whether Fernandez's claims are barred by limitations, one of the grounds on which the Trust sought summary judgment and Fernandez addressed on appeal.[27] *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970) (recognizing that we can affirm a trial court's judgment on a single valid ground). We review a trial court's grant of summary judgment *de novo*. *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex.2007). A defendant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment.

**25.** The Trust also contends that Fernandez failed to preserve any argument regarding abatement in her briefing to the court of appeals. Although Fernandez did not specifically identify abatement as one of the issues presented, she complained about the district court's refusal to abate in her anti-suit injunction discussion. Even assuming Fernandez preserved the abatement argument, we conclude that the grounds for abatement were not met.

**26.** We note that even if the probate court were required to determine heirship before subject matter jurisdiction attached in the district court, abatement may not be the proper remedy. *See State v. Morales*, 869 S.W.2d 941, 949 (Tex.1994) ("When a court lacks jurisdiction, its only legitimate choice is to dismiss.").

**27.** The Trust contends that Fernandez did not adequately challenge all potential summary judgment grounds and, consequently, we must affirm the summary judgment. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970) ("The judgment must stand, since it may have been based on a ground not specifically challenged by the plaintiff...."). Fernandez admits that she did not respond to every argument made in the motions for summary judgment but claims that she did address every ground on which summary judgment was sought, including limitations. *See id.* (requiring challenge of the grounds only, not every argument in a motion for summary judgment). Whether Fernandez made a sufficiently complete challenge or not, our result does not change.

*Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995).

### 1. Limitations

■ When limitations plainly bars a putative heir from proving her heirship, a court is not required to waste time and resources on a paternity determination before disposing of her claims. *See Little v. Smith,* 943 S.W.2d 414, 423 (Tex.1997) (affirming summary judgment barring belated claims for inheritance, without first determining whether putative heir was, in fact, decedent's biological granddaughter). The district court in this case granted summary judgment on both no-evidence and traditional motions for summary judgment in a broadly-worded order that does not specify its reasons. Among other grounds, the motions asserted the affirmative defense of limitations and argued that the discovery rule does not apply because its application would frustrate the state's policy of preserving finality in probate proceedings.

When an heirship claim is brought after an administration of the decedent's estate or a conveyance of the decedent's property to a third party, courts have applied the four-year residual limitations period of Texas Civil Practice and Remedies Code section 16.051. *See, e.g., Cantu v. Sapenter,* 937 S.W.2d 550, 552 (Tex.App.-San Antonio 1996, writ denied); *Smith v. Little,* 903 S.W.2d 780, 787–88 (Tex.App.-Dallas 1995), *rev'd in part on other grounds,* 943 S.W.2d 414 (Tex.1997). Under any conceivable accrual date, the four-year statute of limitations ran well before Fernandez first asserted claims to the Kenedy and East estates. Fernandez conceded that the residual statute of limitations applies and has never denied that it bars her heirship claim absent the application of the discovery rule to save her claims, arguing that we should apply the discovery rule in heirship cases such as this.

### 2. Discovery Rule

■ "Texas courts have refused to apply the discovery rule to claims arising out of probate proceedings in most instances...." *Little,* 943 S.W.2d at 420. Fernandez does not cite a single case holding that the discovery rule applies to save a non-marital child's heirship claim. Indeed, we have not applied the discovery rule in such a context. *See Natural Gas Pipeline Co. of Am. v. Pool,* 124 S.W.3d 188, 198 (Tex.2003) ("This is tantamount to saying that the running of limitations is suspended until the record titleholder obtains actual knowledge of what it owns. This is a novel proposition indeed. It would mean, for example, that limitations would be suspended whenever heirs did not realize that they had inherited an interest. That has never been the law in Texas.") We have, however, held that the rule does not apply to belated claims of inheritance brought by adoptees. *Little,* 943 S.W.2d at 420. In that case, we recognized the difficulty of promptly bringing inheritance claims:

In many cases, however, adoptees may be unable to timely assert inheritance rights, even with the exercise of the utmost diligence. Not all adoptees may know that they are adopted within the applicable limitations period. Even if they know that they are adopted, they may not know where they were born or, more to the point, where the adoption proceedings occurred, so that they may attempt to obtain access to their birth records. Conducting a meaningful search for your identity is difficult if you do not know where to begin that search. And assuming an adoptee found the correct court to petition, that court could well refuse to open adoption records if the only basis for doing so was to allow

the adoptee to see if any inheritance claims existed.

*Id.* at 418. A non-marital child who grows up not knowing the identity of her father could be said to face similar difficulties. But the Court in *Little* balanced those concerns against a "strong public interest in according finality to probate proceedings," declining to apply the discovery rule. *Id.* at 421 (analyzing legislative policy governing adoption). Although the *Little* context of the legislative scheme governing adoption is distinguishable from the instant case, the Court's reasoning in *Little* applies with equal force to belated inheritance claims brought by non-marital children. *See Turner v. Nesby*, 848 S.W.2d 872, 877–78 (Tex.App.-Austin 1993, no writ) (holding that a state's interest in orderly administration of estates and finality of judgments distributing estates can provide a basis for barring a non-marital child's claims against an estate, even if meritorious); *see also* TEX. PROB.CODE §§ 40, 42(b) (demonstrating that section 42(b), which allows non-marital children to inherit from their biological parents, is in all relevant respects the same as section 40, which allows adopted children to inherit from their biological parents). We have long recognized the importance of according finality to judgments, and we have held courts to stringent bill of review standards to protect that policy favoring finality. *See, e.g., Transworld Fin. Servs. Corp. v. Briscoe*, 722 S.W.2d 407, 407 (Tex.1987) ("The grounds upon which a bill of review can be obtained are narrow because the procedure conflicts with the fundamental policy that judgments must become final at some point."); *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996, 998 (1950) ("As said by the Supreme Court of California, 'Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice.'") (quoting *Pico v. Cohn*, 91 Cal. 129, 25 P.

970, 971 (1891)); *Johnson v. Templeton*, 60 Tex. 238, 238 (1883) ("Where the final judgment of a court of competent jurisdiction has been once solemnly pronounced, it ought not to be lightly disturbed. It is alike the interest of individual suitors and of the public at large that there should be at some period an end put to litigation."). Indeed, if we were to apply the discovery rule in this context, we would subject estates to open-ended litigation, a result squarely at odds with the policy that has informed our jurisprudence for more than a century. *See Kerlin v. Sauceda*, 263 S.W.3d 920, 932 & n. 28 (Tex.2008) (Brister J., concurring) ("Recent years have seen a number of suits in South Texas seeking to reopen title claims to lands that have been dormant for decades or centuries.").

Fernandez argues that application of the discovery rule is constitutionally required and that the United States Supreme Court already weighed the relevant policies and found the policy in favor discovery rule application to allow non-marital children to assert their inheritance rights to be the stronger interest. *See Reed v. Campbell*, 476 U.S. 852, 856, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986); *Trimble v. Gordon*, 430 U.S. 762, 776, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). We disagree. In *Trimble v. Gordon*, the United States Supreme Court struck down on equal protection grounds a statute that allowed non-marital children to inherit from their intestate mothers only, while children of a marriage could inherit from both their intestate mothers and their fathers. 430 U.S. at 767, 97 S.Ct. 1459. Under the Court's analysis, a state could not provide for the total statutory disinheritance of a child from a father's estate where the child was born out of wedlock without subsequent marriage of his or her parents. *Id.* Later, in *Reed v. Campbell*, the Court struck down a Texas statute barring non-marital

children from inheriting from their fathers except under special circumstances, such as where their parents had subsequently married. 476 U.S. at 857, 106 S.Ct. 2234. Although a state cannot completely bar the inheritance of non-marital children, the Court clearly indicated that states may place reasonable limitations on such inheritance, so that estates do not remain subject to claims indefinitely:

> The state interest in the orderly disposition of decedents' estates ... justifies the enforcement of generally applicable limitations on the time and the manner in which claims may be asserted. After an estate has been finally distributed, the interest in finality may provide an additional, valid justification for barring the belated assertion of claims, even though they may be meritorious and even though mistakes of law or fact may have occurred during the probate process.

*Id.* at 855–56, 106 S.Ct. 2234; *see Lalli v. Lalli*, 439 U.S. 259, 268, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978) (stating that the Court has long recognized that a state's goal to provide for the just and orderly disposition of property at death "is an area with which the States have an interest of considerable magnitude"). Neither the United States Supreme Court nor this Court has held that the discovery rule applies to claims made by non-marital children, and we see no reason to change course today.[28]

Because the discovery rule does not apply in this case, and because Fernandez concedes that absent application of the discovery rule her claims are time-barred, we need not consider when Fernandez discovered or by the exercise of reasonable diligence should have discovered the truth of her paternity.[29] Instead, because the four-year residual limitations period expired long before Fernandez filed her bills of review, we reinstate the district court's summary judgment.[30] *See Lade-*

---

28. We have also never applied the discovery rule in the context of equitable bills of review. Fernandez argues that the discovery rule applies to save bill of review claims that would otherwise be time-barred, citing cases in which courts of appeals have applied the discovery rule in cases of extrinsic fraud. *See, e.g., Vandehaar v. ALC Financial Corp.*, 25 S.W.3d 406, 409 & n. 2 (Tex.App.-Beaumont 2000, pet. denied); *Defee v. Defee*, 966 S.W.2d 719, 722 (Tex.App.-San Antonio 1998, no pet.). In this case, we do not reach the question of whether extrinsic fraud, or some other circumstances, might compel application of the discovery rule to equitable bills of review.

29. The Trust asserts that even if Fernandez could invoke the discovery rule, summary judgment was proper because the evidence shows that Fernandez was on inquiry notice of her alleged claim of paternity before Kenedy's death and decades before filing her bills of review. Fernandez testified that, based on comments made by her cousins, she suspected Kenedy might be her father as early as age 14 or 15. Fernandez also said that she suspected Kenedy was her father because he brought her dolls for Christmas, and fruit.

Fernandez further stated that as a young adult, sometime around her early twenties, she heard her stepfather say several times to her mother that he was "supporting somebody else's fun," and that he was going to get child support from Kenedy for Fernandez. But Fernandez did not bring the bills of review for more than 50 years, until she was 76. Fernandez says it has been well established that she was not aware of her status as a non-marital child until 2000, when her mother confirmed that Kenedy was her father. We need not resolve this dispute, as we conclude that the discovery rule does not apply in this context as a matter of law.

30. We note that a bill of review is generally available to a party who exercised due diligence in pursuing all adequate legal remedies against a former judgment and did not ignore available legal remedies. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex.1999) (per curiam). Further, relief by equitable bill of review will generally be granted to a party which, "through no fault of its own, [was] prevented from making a meritorious claim or defense by the fraud, accident, or wrongful

*hoff v. Ladehoff,* 436 S.W.2d 334, 336 (Tex. 1968) (holding that a judgment admitting a will to probate is "binding upon the whole world and specifically upon persons who have rights or interest in the subject matter, and this is so whether those persons were or were not personally served").

### III. Anti-suit Injunction

 The court of appeals held that because its summary judgment was improper and its proceedings should have been abated, the district court could not enter an anti-suit injunction. 267 S.W.3d at 84–85. A court may exercise its discretion to issue an anti-suit injunction in four circumstances: "1) to address a threat to the court's jurisdiction; 2) to prevent the evasion of important public policy; 3) to prevent a multiplicity of suits; or 4) to protect a party from vexatious or harassing litigation." *Gonzalez v. Reliant Energy, Inc.,* 159 S.W.3d 615, 623 (Tex.2005). "The party seeking the injunction must show that 'a clear equity demands' the injunction." *Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649, 651 (Tex.1996) (per curiam) (quoting *Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161, 163 (Tex.1986)). Because we hold that the probate court lacks jurisdiction over Fernandez's heirship claims, we do not foresee a continuing threat of Fernandez resuming this litigation in other courts. Accordingly, while we disagree with the court of appeals' reasoning, we affirm the portion of the judgment that the district court's anti-suit injunction be reversed and the Trust's request for injunctive relief be denied. *See Univ. of Tex. v. Morris,* 162 Tex. 60, 344 S.W.2d 426, 429 (1961) (recognizing that this Court is not constrained to the trial court record at the time an injunction was

issued when events subsequent to the issuance of an anti-suit injunction "render the cause for injunctive relief entirely moot or academic"); *see also Gannon v. Payne,* 706 S.W.2d 304, 307 (Tex.1986) ("The circumstances of each situation must be carefully examined to determine whether the [anti-suit] injunction is required to prevent an irreparable miscarriage of justice.").

### IV. Conclusion

For the reasons expressed above, we reverse the portions of the court of appeals' judgment that relate to jurisdiction and abatement. We hold that the discovery rule does not apply to heirship and inheritance claims brought by non-marital children, or to bill of review claims to set aside probate judgments. We therefore render judgment reinstating the district court's summary judgment. We affirm the portion of the court of appeals' judgment that relates to the anti-suit injunction.

Justice O'NEILL and Justice GUZMAN did not participate in the decision.

act of the opposing party." *Id.* We need not determine whether, on these facts, relief by

bill of review was available to Fernandez.