

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00261-CV
_____

BIG HATCHET, LLC, APPELLANT

V.

MONADNOCK RESOURCES, LLC AND MONADNOCK ATG, LLC, APPELLEES

On Appeal from the 121st District Court
Yoakum County, Texas
Trial Court No. 10086; Honorable John A. Didway, Presiding

July 1, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Big Hatchet, LLC, sued Appellees, Monadnock Resources, LLC, and its subsidiary, Monadnock ATG, LLC, (hereinafter collectively "Monadnock") for allegedly failing to timely and properly tender to Big Hatchet the opportunity to participate in the saltwater disposal pipelines ("SWD pipelines") built by Monadnock in a designated area of mutual interest in Yoakum County, Texas. Cross-motions for partial summary

judgment were filed and the 121st District Court entered summary judgment in favor of Monadnock on May 17, 2019. The parties then agreed to abandon certain unresolved claims in order to make the summary judgment final as of the 1st day of July 2019. Big Hatchet timely appealed and raises a single issue, in five subparts: (1) "Did Monadnock 'acquire' the SWD pipelines from 'third parties'?"; (2) "Are the rights-of-way 'infrastructure' that Monadnock 'acquired' from 'third parties'?"; (3) "Alternatively, is the JDA ('Joint Exploration and Development Agreement') ambiguous as to – and are there facts issues regarding – what constitutes 'acquisition' of 'infrastructure' from 'third parties'?"; (4) "Does Big Hatchet have the option to elect that it will participate in only some portions of the SWD pipelines and rights-of-way?"; and (5) "Did Monadnock's tender letter fail to comply with the JDA's terms, thus relieving Big Hatchet of any obligation to respond within ten days?" We affirm the judgment of the trial court.

### BACKGROUND

Big Hatchet and Monadnock entered into a *Lease Purchase and Joint Exploration and Development Agreement* (the "JDA") to jointly develop oil and gas properties within a defined area referred to as the *area of mutual interest* (AMI). The production of hydrocarbons in that particular area produces significant saltwater, which requires proper disposal. Subsequent to execution of the JDA, Monadnock contracted for the construction of two saltwater disposal pipelines within the area of mutual interest. Big Hatchet contends Monadnock breached the JDA by refusing to accept its offer to participate in those SWD pipelines. Monadnock contends the SWD pipelines are not covered by the JDA. Additionally, Monadnock contends Big Hatchet's offer to participate in the SWD pipelines was not in compliance with the terms of their settlement offer.

2

## JOINT DEVELOPMENT AGREEMENT

In September 2015, Big Hatchet and Monadnock entered into the JDA, by which the parties cross-acquired an interest in the other's existing mineral interests in the AMI. In general, Big Hatchet became a 16.666667% interest owner in Monadnock's described properties, whereas, Monadnock became either an 80% or 87.5% interest owner in Big Hatchet's described properties. Monadnock also became the Joint Operator of the jointly owned properties.

The parties expressly anticipated that they would acquire additional interests within the AMI in the future referred to as "Option Interests." To deal with future acquisitions, Section 6.1 of the JDA provided, in part, as follows:

> In the event on or before three (3) years after the Effective Date any Party or its Affiliate, directly or indirectly, acquires or seeks to acquire any AMI Interests that consist of or include rights or interests within the AMI Area, from any third party other than a Party hereto, the acquiring party ("Acquiring Party") shall promptly provide written notice to the other Party ("Rights Party"), offering the Rights Party an opportunity to purchase the Rights Party AMI Share (defined [therein]) of such AMI Interest. . . .

Section 6.1 further required the Acquiring Party to give the Rights Party "prompt" notice and an opportunity to purchase a defined share of the AMI interest, and it spelled out the procedures and requirements for tendering, as well as accepting a tender of that option interest.

## DISPUTED OPTION INTERESTS

Section 1.1 of the JDA defines "AMI Interests" to include various types of mineral interests and expressly provides "that the phrase 'AMI Interest' shall also include any *infrastructure* related to the exploration, operation or development of the foregoing

described leases, estates and interests." (Emphasis added.) In the underlying lawsuit, Big Hatchet contends that "infrastructure" includes the SWD pipelines Monadnock unilaterally acquired during the term of the JDA, both as a completed project and as the individual components of that project. To acquire the necessary rights-of-way, Monadnock hired Norwood Land Services, and to construct the SWD pipelines, it engaged Hadaway Consulting & Engineering. Actual construction of the SWD pipelines began in 2017. Hadaway started in the eastern portion of the AMI Area, constructing what the parties called the "Eastside System." While construction on that system was still underway, Hadaway started construction of what was called the "Westside System." Construction on the two independent systems continued through March 2019.

In May 2017, Big Hatchet first learned about Monadnock's SWD pipeline project. At the time, Monadnock made it clear that it did not intend to include Big Hatchet in the SWD pipeline project. That resulted in Big Hatchet seeking legal counsel concerning its rights under the JDA. In September 2018, Big Hatchet's legal counsel sent Monadnock a letter demanding its "participation rights" under Section 6.1 of the JDA. In response, without admitting any liability under the terms of the agreement, Monadnock offered Big Hatchet an opportunity to participate. Big Hatchet refused Monadnock's offer of participation on the basis that it did not comply with the terms of the JDA and it included additional terms that were onerous and unauthorized by the JDA.

Big Hatchet then filed suit to resolve this dispute. Following the filing of cross-motions for summary judgment, the trial court entered its order on May 17, 2019, granting Monadnock's motion for summary judgment and denying Big Hatchet's motion. In the same order, the trial court found that the individual components of the SWD pipelines (the

4

rights-of-way, the pipelines and supplies, and the labor and services provided) were not "infrastructure" but that the completed SWD pipelines themselves were "infrastructure," albeit, not subject to Section 6.1 of the JDA. The trial court also concluded, as a matter of law, that the JDA did not obligate Monadnock to offer a participation interest to Big Hatchet. Big Hatchet contests each of these findings.

### STANDARD OF REVIEW

In a traditional motion for summary judgment, if the movant's motion and summary judgment evidence facially establish a right to judgment as a matter of law, the burden shifts to the non-moving party to raise a genuine issue of material fact sufficient to defeat summary judgment. TEX. R. CIV. P. 166a(c); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). In our *de novo* review of a trial court's summary judgment, we consider all of the evidence in the light most favorable to the non-movant, crediting favorable evidence to the non-movant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Valence*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. For purposes of a motion for summary judgment, a fact is conclusively established if reasonable minds could not differ about the conclusion to be drawn from the record. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). That is to say, summary judgment evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusion in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). "A defendant who conclusively negates [a single] essential element[] of a cause of action or conclusively establishes an affirmative defense is entitled to summary

5

judgment" on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). When, as here, both parties have moved for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law, and neither may prevail because of the failure of the other to discharge its burden. When the trial court grants one and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *Valence*, 164 S.W.3d at 661.

### ANALYSIS

By its first three sub-issues, Big Hatchet crystalizes the ultimate issue in this case: Were the SWD pipelines, or their component parts, "infrastructure" acquired from third parties? The trial court found that the individual components of a pipeline were not infrastructure but that the completed pipelines were. The trial court further found that, while the completed pipelines were infrastructure, they were not subject to the provisions of Section 6.1 of the JDA. Although the trial court did not make an express finding to that effect, the only logical conclusion that one can draw from the court's order is that the trial court found the SWD pipelines were not subject to Section 6.1 because they were not acquired "directly or indirectly . . . from any third party other than a Party [to the JDA] . . . ."

Big Hatchet contends that because Monadnock acquired the component parts of the SWD pipelines (specifically the rights-of-way, which it contends alone should properly be considered to be infrastructure) from third parties, Monadnock was obligated under the JDA to offer it a participation right in the SWD pipelines. Monadnock disputes this claim, contending the JDA was never intended to cover unilateral operations of the

6

corporation in the development of interests in the AMI. A plain reading of the JDA supports Monadnock's interpretation.

By its express terms, Section 6.1 of the JDA applies if Big Hatchet or Monadnock acquires an AMI Interest from a third party within three years of the effective date of the JDA. An "AMI Interest" is any one of the listed types of mineral interests, as well as the infrastructure related to the exploration, operation, or development of those interests. A pipeline right-of-way, in and of itself, is of little use and benefit to the exploration, operation, or development of the hydrocarbon minerals without the accompanying use of the pipeline itself. Therefore, as an individual component, it does not meet the definition of "infrastructure." Likewise, the pipeline, supplies, labor, and materials, in and of themselves, are not "infrastructure." However, as a completed project, an operational pipeline, whether for the transportation of hydrocarbons or for the necessary disposal of by-products like saltwater, is properly considered "infrastructure." But the classification of the SWD pipelines as infrastructure alone is not sufficient to trigger the participation rights contemplated by Section 6.1. That provision also expressly limits its application to AMI Interests acquired "from any third party other than a Party [to the JDA]. . . ." Here, the completed project was owned by Monadnock. It was not "acquired" from a third party and it was not subject to the provisions of Section 6.1. Sub-issues one, two, and three are overruled.

Our disposition of sub-issues one, two, and three renders sub-issues four and five moot and they are pretermitted. *See* TEX. R. APP. P. 47.1.

**CONCLUSION**

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice