

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00112-CV

Victor **HILDERBRAN**, Homer Ray Smith, Ramon Castro, Dean Paret, and Brad Bradley,
Appellants

v.

**TEXAS SOUTHWEST COUNCIL, INC., BOY SCOUTS OF AMERICA**,
Appellee

From the 452nd District Court, Edwards County, Texas
Trial Court No. 4111
Honorable Robert Hoffman, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: June 2, 2021

REVERSED AND RENDERED IN PART; AFFIRMED AS MODIFIED IN PART

Appellants Victor Hilderbran, Homer Ray Smith, Ramon Castro, Dean Paret, and Brad
Bradley appeal the trial court's evidentiary rulings and its orders denying their motions for
summary judgment and granting the competing motions of appellee Texas Southwest Council,
Inc., Boy Scouts of America ("TSWC"). We affirm the trial court's evidentiary rulings, reverse
the trial court's summary judgment and render judgment for Appellants in part, and affirm the trial
court's summary judgment as modified in part.

## BACKGROUND

This dispute involves the parties' competing claims to a tract of land in Edwards County known as Camp Fawcett. In 1930, a group of Edwards County citizens conveyed 300 acres of land that would become Camp Fawcett to E.K. Fawcett, V.A. Brown, K.T. Biggs, F.M. Getzendaner, and O.C. Meyers to hold in trust "for the use and benefit of the several troops of Boy Scouts of America which are now under the jurisdiction of the Southwest Texas Council, Boy Scouts of America." Despite their similar names, the Southwest Texas Council, Boy Scouts of America is a now-defunct entity unrelated to appellee TSWC. Appellants contend they are the successors to the 1930 trustees.

The 1930 deed contains four paragraphs whose language is relevant to this dispute:

FIRST. Said property is to be held by the said Trustees for the use and benefit of the several troops of Boy Scouts of America which are now under the jurisdiction of the Southwest Texas Council, Boy Scouts of America, and for such other uses, purposes and benefits as are customarily enjoyed by the Boy Scouts Troops, as long as the Southwest Texas County [*sic*], Boy Scouts of America, shall function as such and is to be under the supervision, management and control of the said trustees and their successors. Said Trustees shall have the right to improve and utilize said property in any way it may deem proper and desirable for the benefit of the said Boy Scout troops.

SECOND. In case at any time during which the said Southwest Texas Council, Boy Scouts of America, is functioning any vacancy that shall occur in the said board of Trustees, other than a vacancy in the presidency and camp chairmanship of said Council, they being Trustees by reason of their said offices, shall be filled by a majority of the other trustees by the selection and appointment of a successor to fill such vacancy, any successor trustee shall have all the powers and authority possessed by his predecessor trustee. Should at any time the said Council cease to function, then an [*sic*] in that event, the then five trustees and their successors shall hold the premises in trust as hereinafter set out, and such trustees shall fill any vacancy that shall occur in the Board of Five Trustees by a majority of the remaining members of said trustees selecting, appointing and constituting a successor to fill such vacancies, any such successor Trustee to have all the powers and authority possessed by his predecessors Trustee.

THIRD. Said Trustees or their successors, may, if in their judgment it is advisable to lease said property in whole or in part, sell or lease said property upon such terms or conditions as they deem best and shall reinvest the proceeds derived from such

sale or lease or any part thereof, in such property as in the judgement [*sic*] may be best suited for a camp site, the title to any property in which said proceeds are any part may be reinvested to be taken in the name of said trustees and their successors and the deed therefor [*sic*] to contain the same Trust provision as herein set forth. In the event of the sale or lease of said property by said trustees, the same shall be sold or leased free of each and all of the conditions set forth herein and the purchaser or lessee thereof shall hold said title free and clear of each and all of the provisions and conditions set forth in this deed and shall not be required to see to the application of the purchase or lease money. When property is purchased under the provisions and conditions of this paragraph, and a surplus remains from the proceeds of the sale of the property herein described, then said surplus may be used by said Trustees either in the improvement of said property or may be invested by said Trustees in safe and productive securities, and the income thereof used for the maintenance of said property or for other Boy Scout purposes, as to the said Trustees may see fit and proper.

FOURTH. In the event that such property shall cease to be used for the purposes herein set forth, or the said Southwest Texas Council, Boy Scouts of America shall cease to function, then in either of said events it shall be controlled, supervised and managed by the then existing Board of Trustees and utilized for such purpose or purposes as to them seem fit and proper.

The Southwest Texas Council, Boy Scouts of America ceased operating at some point in the 1930s.

Appellee TSWC contends that because the shuttering of the Southwest Texas Council, Boy Scouts of America gave the then-existing trustees the right to utilize the property "for such purpose and purposes as to them seem fit and proper," those trustees owned the property in fee simple absolute.

In 1943, the five then-existing trustees conveyed Camp Fawcett to TSWC, which was then known as the Concho Valley Council. The 1943 deed repeated the paragraphs labeled FIRST, SECOND, THIRD, and FOURTH in the 1930 deed. The 1943 deed also provided that the then-existing trustees conveyed the land:

on condition that such [Concho Valley] Council and its successors shall perform and carry out the foregoing terms and conditions relating to the use of the said lands for the several troops of the Boys Scouts of America now located and to be located within the jurisdiction of what has been heretofore termed the Southwest Texas Council, Boy Scouts of America, and on the further condition that the properties conveyed shall be operated, managed and controlled under the name of Camp Fawcett.

The 1943 deed further provided:

Should the said Council, its successor or successors, at any time discontinue the management and control of the properties here conveyed for the use and benefit of the beneficiaries named in the original trust conveyance or in this instrument, then in that event all rights, titles and interest accruing to such Council, its successor or successors, under this conveyance shall be forfeited and all such rights and titles revert to the grantors and their successors upon written notice being given by them to the grantee, its successor or successors of their intention to declare such forfeiture and re-acquire and re-take possession of the said trust estate.

In 1947, TSWC sold a portion of the original tract, reducing it to its current size of 178 acres. It is undisputed that TSWC leased the land for grazing and mineral exploration multiple times over the years.

At some point between 2004 and 2006, TSWC began closing Camp Fawcett during deer hunting season "[a]s a safety precaution . . . because of hunting that is being done on adjacent properties." In 2007, TSWC signed a two-year hunting lease agreement with Alford and Pat Stewart that allowed the Stewarts to hunt on Camp Fawcett "during state established regular fall and spring hunting seasons set for" specific animals. The Stewart lease expressly reserved TSWC's "right to conduct youth activities as well as ranching operations at all times on the Property." In 2015, TSWC signed a hunting lease agreement with Shelly and Robbie Hilton that conveyed "the sole and exclusive right to the hunting and fishing use of" Camp Fawcett from November 1, 2015 until January 3, 2016. Unlike the Stewart lease, the Hilton lease conveyed "continuous access to [the] property through the entirety of the term" and did not specifically reserve TSWC's right to conduct scouting activities on the land.

In 2016, TSWC signed a one-year hunting lease with Jason Baker. Like the Hilton lease, the 2016 Baker lease conveyed "the sole and exclusive right to the hunting and fishing use of" Camp Fawcett and "continuous access to [the] property through the entirety of the term." Unlike the Hilton lease, the 2016 Baker lease gave Baker exclusive use of the property "between the months of November and January." It also reserved TSWC's "right to restrict access on certain

weekends for Scouting Event purpose[s] to be decided on a future date" and noted Baker's acknowledgment that "he is not to use or access [the] property on said weekends." In 2017, TSWC and Baker signed a second hunting lease, this time with a term of May 1, 2017 until April 30, 2020, with an option to renew for another three years. The 2017 Baker lease added October to the months specified for Baker's exclusive use of the property. Like the 2016 Baker lease, the 2017 Baker lease reserved TSWC's "right to restrict access on certain weekends for Scouting Event purpose[s] to be decided on a future date" and noted Baker's acknowledgement that he could not use or access the land during those weekends.

On November 5, 2017, Appellants filed an "Affidavit of Fact" in the Edwards County property records. In the affidavit, Appellants alleged the 1943 deed contained a condition subsequent that TSWC violated by failing to manage and control Camp Fawcett "in a manner which benefits the beneficiaries named in the original conveyance, specifically the youth of the counties served by the original Southwest Texas Council." They asserted they therefore had the right "to declare such forfeiture and reacquire and retake possession of" Camp Fawcett. Appellants also sent TSWC a letter demanding it execute an Affidavit of Reversion and relinquish possession of Camp Fawcett. When TSWC refused, Appellants filed a trespass to try title action. In response, TSWC alleged: (1) Appellants were not the properly appointed successors of the 1930 trustees and thus lacked standing to file their lawsuit; (2) Appellants' trespass to try title action was barred by limitations; and (3) alternatively, TSWC had adversely possessed the property for more than ten years. TSWC also filed a counterclaim seeking to remove the cloud on its title created when Appellants filed their Affidavit of Fact.

Both parties filed traditional and no-evidence motions for summary judgment. TSWC sought no-evidence summary judgment on Appellants' claim that TSWC had discontinued its operation and control of Camp Fawcett for the benefit of area Boy Scout troops. It sought

traditional summary judgment on Appellants' standing, its own limitations and adverse possession claims, the issue of whether the 1943 deed contained a condition subsequent and, if so, whether Appellants' right to reentry pursuant to that condition had vested, and TSWC's counterclaim to remove the cloud on its title. Appellants sought no-evidence summary judgment on TSWC's limitations and adverse possession claims and traditional summary judgment on their own standing and their trespass to try title action. Both parties filed multiple objections to each other's summary judgment evidence.

In September of 2019, after Appellants filed their initial motion for summary judgment, TSWC and Baker executed an amended hunting lease with an effective date of May 1, 2017. This 2019 amended lease gives Baker "the non-exclusive right to fishing while on the property" and specifies that nothing in the parties' agreement prohibits Boy Scouts from fishing at Camp Fawcett. It requires Baker to give TSWC 24 hours' notice before he accesses Camp Fawcett during White-Tailed Deer General Season and to obtain permission from TSWC at least 48 hours before accessing the property outside of White-Tailed Deer General Season. It also provides that TSWC has the right to deny or restrict access to Baker "on any days outside of White-Tailed Deer General Season when Camp Fawcett is scheduled to be used for scouting purposes." The amended lease explains the parties executed it because they "desire[d] to amend the [2017 Baker lease] for the terms to fall in line with the past and future practices."

On December 9, 2019, the trial court signed the orders that are the subject of this appeal. It overruled Appellants' objections to the evidence TSWC offered in support of its first amended traditional and no-evidence motion for summary judgment and sustained TSWC's objections to the evidence Appellants offered in support of their response to that motion.[1] The trial court denied

---

[1] The record does not show that the trial court explicitly ruled on either TSWC's objections to the evidence Appellants offered in support of their first amended traditional motion for summary judgment or on Appellants' objections to

Appellants' first amended motion for summary judgment and their no-evidence motion for summary judgment on TSWC's affirmative defenses and adverse possession claim. Finally, the trial court granted TSWC's traditional and no-evidence motion for summary judgment and ordered that Appellants take nothing by their claims. In its order granting TSWC's motion for summary judgment, the trial court ordered that title to Camp Fawcett is vested in TSWC. After the trial court denied Appellants' motion to modify the judgment or for new trial, Appellants filed this appeal.

### ANALYSIS

### *Evidentiary Issues*

In their third and fourth issues, Appellants challenge the trial court's rulings sustaining the majority of TSWC's objections to Appellants' summary judgment evidence and overruling Appellants' objections to TSWC's evidence. Because the resolution of these evidentiary challenges will affect our analysis of the parties' arguments, we address them first. *See Tex. Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 310 (Tex. App.—El Paso 2010, pet. denied).[2]

### *Evidentiary Standards of Review*

We review a trial court's decision to admit or exclude summary judgment evidence for abuse of discretion. *See E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 854 (Tex. App.—San Antonio 2017, no pet.). A trial court does not abuse its discretion in admitting or excluding

---

TSWC's evidence responding to that motion. For these objections to be preserved for our review, something in the record—other than the granting of TSWC's motion for summary judgment—must reflect that the trial court ruled on them. TEX. R. APP. P. 33.1(a)(2)(A); *Ordonez v. Solorio*, 480 S.W.3d 56, 63 (Tex. App.—El Paso 2015, no pet.). Here, the objections and evidence the trial court did not explicitly rule on are essentially identical to the objections and evidence it disposed of in its written orders. Under these unique circumstances, we conclude the trial court implicitly ruled on all of the parties' objections. *See Guerra v. Alexander*, No. 04-09-00004-CV, 2010 WL 2103203, at *3 (Tex. App.—San Antonio May 26, 2010, pet. denied) (mem. op.) ("[A] trial court can implicitly rule on a motion so long as the ruling is capable of being understood from the record.").

[2] In their statement of the issues presented, Appellants complain of the trial court's orders sustaining TSWC's objections to their summary judgment evidence. However, their brief presents no argument or authority that those rulings were an abuse of discretion. TEX. R. APP. P. 38.1(i). As a result, we do not reach this issue. *Ruffin v. Sanchez*, No. 04-16-00759-CV, 2017 WL 4014651, at *1 (Tex. App.—San Antonio Sept. 13, 2017, no pet.) (mem. op.).

summary judgment evidence unless it acts without reference to guiding rules or principles. *See id*. We must uphold the trial court's evidentiary ruling if there is any legitimate basis for it, and we may not reverse a judgment based on an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See Hernandez v. Zapata*, No. 04-19-00507-CV, 2020 WL 3815932, at *3 (Tex. App.—San Antonio July 8, 2020, no pet.) (mem. op.).

*Appellants' Objections to TSWC's Evidence*

Appellants raised multiple discrete objections to affidavits and unsworn declarations from TSWC's fact and expert witnesses, and the trial court ruled on each objection individually. Appellants' brief challenges some, but not all, of those rulings. *See Cruz v. Van Sickle*, 452 S.W.3d 503, 511 (Tex. App.—Dallas 2014, pet. denied) (refusing to consider evidentiary rulings not challenged in brief). We examine each in turn.

*Fact Witness Declarations*

1.      Koehler declaration

Appellants' brief asserts several objections to two unsworn declarations submitted by TSWC's Scout Executive and corporate representative, Devin Koehler. First, Appellants contend that "Paragraph 6 of Devin Koehler's [October 30, 2019] declaration is conclusory and uncorroborated by underlying facts" and was "not supported by any admissible documentation." An affidavit is conclusory if it fails to explain the facts underlying its inferences or legal conclusions. *See La China v. Woodlands Operating Co., L.P.*, 417 S.W.3d 516, 520–21 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Paragraph 6 provides:

> [TSWC] is aware that Edwards County is popular with deer hunters in the State of Texas. [TSWC] is also aware that neighboring property owners hunt on their properties adjacent to Camp Fawcett or allow others to hunt on their properties. Sometime on or before February 2, 2006, [TSWC] made the decision to close both Camp Fawcett and Camp Sol Mayer during deer hunting season. [TSWC] made the decision to close the two camps based on the safety and best interests of the boy

scout troops and volunteers that use the camps and to avoid even the possibility that anyone may be put in harm's way from hunters on neighboring properties.

These are factual statements about TSWC's past decisions made by TSWC's Scout Executive, "a leadership position that gives [him] knowledge of the day-to-day operations of [TSWC], its history, its records. . . ." *See id.* These statements are not legal conclusions, nor do they express any inferences Koehler had drawn. *See id.* Because Paragraph 6 consists solely of factual statements that could, if untrue, have been readily controverted, the trial court did not abuse its discretion by overruling Appellants' objection that it was conclusory. *See id.*; *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 495 n.2 (Tex. App.—Dallas 2003, no pet.); *see also Casso v. Brand*, 776 S.W.3d 551, 558 (Tex. 1989) (evidence "could have been readily controverted" if it is "of a nature which can be effectively countered by opposing evidence").

Appellants further contend Koehler is an interested witness and his statements are therefore inadmissible because TSWC's summary judgment evidence did not include the documents upon which he relied. Rule 166a(c) provides that "[a] summary judgment may be based on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX. R. CIV. P. 166a(c). Here, Appellants have not argued that they presented any evidence to controvert Paragraph 6, nor have they contended that Paragraph 6 failed to satisfy any of the requirements of Rule 166a(c). Furthermore, we have found no authority to support the assertion that an interested witness's factual assertions about matters within his personal knowledge must be supported by documentation. *See generally* TEX. R. CIV. P. 166a. Although Rule 166a(f) provides that "sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith," Paragraph 6 did not refer to any specific "papers or parts thereof"; instead, it relied on Koehler's own personal knowledge

of TSWC's operations. *Id.* R. 166a(f). For these reasons, Appellants have not shown the trial court abused its discretion by overruling their objection to Paragraph 6 of Koehler's deposition. *See id.*

Next, Appellants challenge Koehler's statements that TSWC used the proceeds from the hunting leases to benefit Camp Fawcett and the Boy Scout troops that use it. Appellants contend these statements are conclusory because they were unsupported by "any accounting or other documentation showing how the money was actually spent." As noted above, Koehler's declaration recites he is familiar with TSWC's day-to-day operations. It also notes he is "familiar with the finances and budget for [TSWC]." Appellants have not argued that they presented any evidence to controvert Koehler's statements about TSWC's use of the hunting lease proceeds or that his statements on that point failed to satisfy Rule 166a(c). *See id.* R. 166a(c). Appellants therefore have not shown the trial court abused its discretion by overruling their objection to this portion of Koehler's declarations. *See id.*

Finally, Appellants complain that the 2019 amended lease, which was an exhibit to Koehler's declarations, "is wholly irrelevant to whether the 2016 and [2017] Baker leases triggered the reverter clause in the 1943 Deed." They also argue the amended lease's only possible probative value is as an admission that the prior Baker leases breached the condition subsequent. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. Here, the 2019 amended lease recites that the parties executed it to ensure their agreement's terms comported with their past practices. Under these circumstances, even if we accept Appellants' argument that the original terms of the 2016 and 2017 Baker leases could be interpreted as relinquishing TSWC's control over Camp Fawcett to Baker, the trial court did not abuse its discretion by concluding that evidence showing neither TSWC nor Baker intended that outcome had "some logical connection" to whether those leases breached the alleged condition subsequent.

*In re Estate of Denman*, 362 S.W.3d 134, 141 (Tex. App.—San Antonio 2011, no pet.); *see also*

*Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 549–50 (Tex. 2018) ("Alleged

omissions or inaccuracies typically go to the weight of the evidence, not its admissibility.").

For these reasons, Appellants have not shown the trial court abused its discretion by

overruling their objections to Koehler's declarations.

2.      Baker declaration

Appellants objected to the portions of Jason Baker's declaration "wherein he discussed the

2019 Amended Lease as if it were the controlling document," and they contend the trial court erred

by overruling this objection because the amended lease is irrelevant. For the reasons described

above, we conclude Appellants have not shown the trial court abused its discretion by overruling

this objection to Baker's declaration. *See In re Estate of Denman*, 362 S.W.3d at 141; *Diamond

Offshore Servs. Ltd.*, 542 S.W.3d at 549–50.

*Expert Affidavits and Declarations*

1.      Locke report

Barbara "Darlene" Locke, who is an expert on the operation of youth camps, authored a

report discussing whether TSWC operates Camp Fawcett according to best practices and in the

interest of the Boy Scouts who use the property. On appeal, Appellants assert four challenges to

the trial court's order overruling their objections to Locke's report.

Appellants first argue Locke's report is deficient because she "regurgitated alleged facts

from a pile of documents she was provided by [TSWC's] law firm, a set of papers not contained

in the summary judgment record." Through this argument, Appellants specifically challenge

Locke's statement that TSWC decided to close Camp Fawcett during deer hunting season for

safety reasons, which Appellants describe as improper bolstering of TSWC's other evidence on

this issue. Even if we assume the trial court erred by admitting this portion of Locke's report, it is

cumulative of the portions of Koehler's declarations that address the same issue. *See Hernandez*, 2020 WL 3815932, at \*6. Because the trial court did not abuse its discretion by admitting Koehler's declarations, Appellants have not shown they were harmed by any error in admitting this portion of Locke's report. *See id.*

Appellants next contend "Locke's report also includes a number of vague pronouncements that are not supported by any underlying evidence." Appellants point to Locke's citation of the 1930 deed to support her opinion that "[w]hen directors are concerned that facilities are not safe, procedures are put in place to address that concern." Appellants argue "[t]he 1930 Deed does not support this conclusion" and that the trial court therefore should have excluded it. Even if we assume the trial court erred by admitting this statement, Appellants have not explained how that error probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1; *Hernandez*, 2020 WL 3815932, at \*3.

Finally, Appellants challenge Locke's opinion regarding the benefits of leasing Camp Fawcett "during the 'off-season'" and her statement that TSWC used the income from the hunting leases to benefit Camp Fawcett. These statements are cumulative of Koehler's declarations about TSWC's use of the hunting lease proceeds. *See Hernandez*, 2020 WL 3815932, at \*6. Because the trial court did not abuse its discretion by admitting Koehler's declarations, Appellants have not shown they were harmed by any error in admitting these cumulative portions of Locke's report. *See id.*

For these reasons, Appellants have not shown the trial court's error, if any, in overruling their objections to Locke's report warrants reversal of the judgment. *See* Tex. R. App. P. 44.1; *Hernandez*, 2020 WL 3815932, at \*3.

2. Pomeroy report

Another of TSWC's expert witnesses, Chad Pomeroy, is a law school professor who teaches property law. He authored a report opining that: (1) the 1943 deed conveyed Camp Fawcett to TSWC in fee simple absolute, not in fee simple subject to a condition subsequent; and (2) if the 1943 deed contains a condition subsequent, TSWC did not trigger that condition. Appellants specifically attack Pomeroy's opinion that the 1943 deed does not contain a condition subsequent.

Appellants first contend that "[t]here was no showing that Pomeroy was qualified to give expert testimony" on the construction of a Texas deed. However, their only support for this assertion was the fact that, at the time he authored his report, Pomeroy was not licensed to practice law in Texas and "had never written an article on Texas property law." Appellants have cited no authority—nor have we found any—limiting an expert's qualifications in such a way. We therefore overrule this complaint.

Next, Appellants argue "[t]he 1943 Deed is not ambiguous, and there is no need for expert testimony to help the court read the deed." While we have recognized that "experts are not permitted to testify regarding their opinions as to pure questions of law such as the construction of unambiguous contracts and deeds," we generally presume "that in a matter not tried before a jury, a court disregards any incompetent evidence and considers only the competent evidence in reaching its decision." *Garza v. Prolithic Energy Co., L.P.*, 195 S.W.3d 137, 146–47 (Tex. App.— San Antonio 2006, pet. denied). Moreover, if there is other competent evidence to support the trial court's judgment, then any error in overruling this objection to Pomeroy's report will not require reversal of the judgment. *Gillespie v. Gillespie*, 644 S.W.2d 449, 450 (Tex. 1982). We will therefore presume, without deciding whether the trial court properly overruled this objection, that the court considered only admissible evidence regarding the construction of the 1943 deed—

namely, the deed itself. *See Hernandez v. El Paso Prod. Co.*, No. 13-09-00184-CV, 2011 WL 1442991, at *6 (Tex. App.—Corpus Christi–Edinburg Apr. 14, 2011, pet. denied) (mem. op.).

Third, Appellants contend Pomeroy's report relies on facts "that are not supported by any probative evidence in the summary judgment evidence or attached to the affidavit or report." The purportedly unsupported facts Appellants identify in their brief are Pomeroy's assumptions that: (1) TSWC invests proceeds from the hunting leases back into Camp Fawcett; and (2) "the camp is unavailable to Boy Scouts only during white-tailed deer season." As with Locke's report, because these statements are cumulative of other evidence we have concluded the trial court did not erroneously admit or which Appellants did not challenge on appeal, we decline to reverse the trial court's admission of Pomeroy's report. *See Hernandez*, 2020 WL 3815932, at *6.

For these reasons, Appellants have not shown that the trial court's error, if any, in overruling their objections to Pomeroy's report warrants reversal of the judgment. *See id.*, at *3; TEX. R. APP. P. 44.1.

We overrule Appellants' third and fourth issues.

### *Summary Judgment Issues*

In their first, second, and fifth issues, Appellants challenge the trial court's rulings on the parties' motions for summary judgment. The parties raised competing no-evidence and traditional arguments on: (1) Appellants' standing and capacity to bring this lawsuit; (2) the existence of a condition subsequent in the 1943 deed; (3) whether TSWC breached the condition subsequent, if any, and therefore triggered Appellants' contingent future interest in Camp Fawcett; and (4) whether Appellants' interest in Camp Fawcett, if any, failed because Appellants did not timely assert their claims and/or because TSWC adversely possessed the land. Additionally, TSWC sought traditional summary judgment on its counterclaim to remove the cloud on its title to Camp Fawcett.

*Appellants' Standing and Capacity to Sue*

In its traditional motion for summary judgment, TSWC argued Appellants lacked both standing and capacity to bring this lawsuit because the evidence conclusively shows they were not appointed as trustees as required by the controlling deeds. TSWC also sought a no-evidence summary judgment on this issue. In contrast, Appellants' traditional motion for summary judgment argued the evidence conclusively establishes their standing and capacity. The trial court denied Appellants' motion and granted TSWC's motion. Because standing is a threshold component of subject matter jurisdiction that cannot be waived, we will consider this issue before turning to the parties' other summary judgment arguments. *See, e.g.*, *Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

*Standard of Review and Applicable Law*

"A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). To have standing, a plaintiff must allege an injury that is "concrete and particularized, actual or imminent, not hypothetical." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008). Additionally, "[s]tanding consists of some interest peculiar to the person individually and not as a member of the general public." *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). The plaintiff bears the burden of pleading facts that show there is a genuine controversy between the parties that will be actually determined by the relief sought. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). In reviewing whether a plaintiff has met this burden, we accept the material allegations in the plaintiff's petition as true and construe the petition in the plaintiff's favor. *Id.* Here, because each individual Appellant seeks an award of a personal interest in title to Camp Fawcett, we must determine their standing on a "plaintiff-by-plaintiff" basis. *See Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 77–78 (Tex. 2015); *Heckman*, 369 S.W.3d at 153. In conducting a de

novo review of a party's standing, we may consider the entire record. *See RDG P'ship v. Long*, 350 S.W.3d 262, 272 (Tex. App.—San Antonio 2011, no pet.).

Unlike standing, a challenge to a party's capacity questions that party's legal authority to prosecute the lawsuit, not the court's authority to hear it. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848–49 (Tex. 2005); *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). The issue of whether a party is entitled to sue under a contract—or, as here, a deed—is a capacity challenge. *See Malouf v. Sterquell PSF Settlement, L.C.*, No. 05-17-01343, 2019 WL 5799988, at *3 (Tex. App.—Dallas Nov. 7, 2019, pet. denied) (mem. op.). Like standing, issues about a party's capacity present questions of law we review de novo. *See id.*

The parties' standing and capacity arguments turn on whether Appellants were appointed as trustees in accordance with the terms of the 1930 and 1943 deeds. Those deeds are identical as to their description of the method for replacing departing trustees, and neither party has argued the deeds are ambiguous. We construe unambiguous deeds as a matter of law, "discern[ing] a grantor's intent from the plain language of the deed without reference to technicalities or arbitrary rules." *W. 17th Res., LLC v. Pawelek*, 482 S.W.3d 690, 695 (Tex. App.—San Antonio 2015, pet. denied). We must construe the deed as written and may not add to or change its clear and unambiguous language. *Luckel v. White*, 819 S.W.2d 459, 463 (Tex. 1991); *Hosek v. Scott*, 04-14-00655-CV, 2015 WL 6163385, at *4 (Tex. App.—San Antonio Oct. 21, 2015, no pet.) (mem. op.).

*Application*

*Standing*

Appellants argue the 1943 deed conveyed Camp Fawcett to TSWC in fee simple subject to a condition subsequent, reserving a right of reentry for the 1943 trustees. They contend they are the properly appointed successors to those trustees and therefore have standing to assert that right of reentry. Assuming without deciding that this right of reentry exists, we agree that a trustee

appointed in accordance with the terms of the controlling deeds would have standing to assert it. *See BP Am. Prod. Co. v. Laddex, Ltd.*, 513 S.W.3d 476, 480–82 (Tex. 2017) (party with a valid reversionary interest in a lease had standing to sue under the lease).

TSWC's primary argument on Appellants' standing is that "[t]he 1930 Deed requires that there should always be five trustees" and Appellants' predecessors violated this requirement by failing to fill trustee vacancies for long periods of time. It is true that both the 1930 and 1943 deeds describe the board of trustees as consisting of five members. It is also true that the summary judgment record shows several instances where the board consisted of fewer than five members, sometimes for many years. However, the deeds provide only that the trustees "shall fill any [vacancy] that shall occur in the Board of Five Trustees by a majority of the remaining members of said trustees selecting, appointing and constituting a successor to fill such vacancies." The deeds do not impose a deadline on the remaining trustees to fill a vacancy. *See Hosek*, 2015 WL 6163385, at *4 (refusing to apply an interpretation that added language to deed). Nor do the deeds suggest either a maximum number of trustees that may be replaced at one time or a minimum number of trustees who must vote on those replacements. *See id.* As a result, neither the passage of time between successor trustee appointments nor the board's historical habit of replacing multiple trustees at once conclusively negates the validity of Appellants' own appointments. TEX. R. CIV. P. 166a(c); *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

TSWC also argues that inconsistencies and gaps in the trustee succession evidence conclusively show Appellants were appointed by trustees who were themselves improperly appointed. TSWC appears to contend these gaps stretch back to the 1930s. However, the summary judgment record contains either written resignations or death certificates for original 1930 trustees F.M. Getzendaner, K.T. Biggs, and E.K. Fawcett as well as for 1943 trustees Charles Carson and

E.J. "Elmer" Fawcett.[3] Moreover, the record shows TSWC did not object to or present any evidence controverting Appellants' evidence detailing the line of trustee succession between 1930 and 1981. Our review of this uncontroverted summary judgment evidence reveals an unbroken line between the original 1930 trustees and their successor trustees through at least February 4, 1981. We therefore begin our analysis of the remaining trustee succession evidence on that date.

### 1. Appointment of Appellant Homer Ray Smith

The minutes of the February 4, 1981 trustee meeting indicate there were three living, active trustees at that time: Elmer Fawcett, Robert Paret,[4] and Robert McNiel. The minutes also show that Fawcett, Robert Paret, and McNiel unanimously selected Bruce Barker and Appellant Homer Ray Smith to replace two former trustees who had died. The votes of Fawcett, Robert Paret, and McNiel would have constituted a majority of the five-member board—and thus satisfied the plain language of the controlling deeds—even if there had been a full slate of five trustees at that time; TSWC did not present any summary judgment evidence to the contrary. This uncontroverted summary judgment evidence "allows of only one logical inference"—that Smith's appointment complied with the express terms of the controlling deeds. *See City of Keller v. Wilson*, 168 S.W.3d 802, 814–15 (Tex. 2005). Because the evidence conclusively shows Smith was properly appointed as a trustee, it also conclusively shows he had standing to file this lawsuit. *See id.*; *see also Laddex*, 513 S.W.3d at 480–82.

### 2. Appointment of Appellants Castro, Dean Paret, Bradley, and Hilderbran

The record shows that the next meeting at which new trustees were appointed occurred on July 14, 1990. The minutes of that meeting describe that McNiel and Smith were the "only 2 active

---

[3] TSWC also contends the summary judgment record does not contain a resignation from former trustee Bruce Barker. The evidence regarding Barker's departure from the board is discussed in more detail below.
[4] Robert Paret is the father of Appellant Dean Paret.

members left on the Board" at that time. The minutes also recite that McNiel and Smith voted to replace three trustees who had ceased serving since the 1981 meeting—Elmer Fawcett, Bruce Barker and Robert Paret—with John Keyes Finegan, John Petry, and Lloyd Deaton. The 1990 minutes note that Elmer Fawcett had died since the 1981 meeting and that Barker and Robert Paret had moved out of Texas. TSWC maintains this shows there is no evidence Barker and Robert Paret ever resigned, and appears to contend that without their votes, Appellants cannot show the trustees appointed during the 1990 meeting were selected "by a majority of the remaining members of said trustees selecting, appointing and constituting a successor to fill such vacancies." This assertion, if true, would be significant because one of the successor trustees chosen during the 1990 meeting—Finegan—later cast a vote to appoint Appellants Castro, Dean Paret, and Bradley.

However, the summary judgment evidence does not support a conclusion that a trustee may only be replaced if he dies or explicitly resigns in writing. In the provisions establishing procedures for the replacement of departing trustees, the controlling deeds speak only to "any vacancy that shall occur," and they do not place any parameters on how a "vacancy" must come to exist. *See Hosek*, 2015 WL 6163385, at *4 (refusing to apply an interpretation that added language to deed). While the 1990 minutes do not specifically explain that Barker or Robert Paret resigned, they do explain that the newly chosen trustees "will replace" Barker and Robert Paret because they had both moved away and that there are "only 2 active members left on the Board." TSWC did not present any controverting evidence. We conclude the summary judgment evidence does not conclusively negate the existence of the vacancies created by Barker[5] and Robert Paret's departures and, in the absence of any controverting evidence, conclusively proves Robert Paret's vacancy existed. *See, e.g.*, *City of Keller*, 168 S.W.3d at 814–15; *see also Casso*, 776 S.W.3d at

---

[5] Even if we assume Barker remained a trustee at the time of the 1990 meeting, the only inference that can be drawn from this evidence is that two of the three then-existing trustees—i.e., a majority—chose to replace him.

558. As a result, TSWC is not entitled to judgment as a matter of law based on this purported discrepancy in the summary judgment evidence. *See City of Keller*, 168 S.W.3d at 814–15.

TSWC also identifies discrepancies in the minutes of the November 14, 2010 meeting at which Appellants Castro, Dean Paret, and Bradley were appointed. First, the minutes indicate that "Board members in attendance included John Keyes Finegan and [Homer] Ray Smith. The remaining members, Elmer Fawcett, Robert McNeal [*sic*] and Bruce Barker have, prior to this meeting, either died or resigned membership to this Board." The minutes further note that the only remaining trustees—i.e., Finegan and Smith—"voted unanimously to fill the three vacancies to the board." This appears to indicate that two of the trustees being replaced during the 2010 meeting were Fawcett and Barker, both of whom had purportedly been replaced during the 1990 vote. Additionally, the 2010 minutes do not mention either Petry or Deaton, who were appointed as trustees in 1990. However, Appellants' summary judgment evidence includes death certificates for Fawcett, who died in 1988; McNiel, who died in 1997; and Deaton, who died in 2001. Moreover, while the 1990 and 2010 minutes appear to conflict on the precise date of Barker's departure from the board, the 2010 minutes unequivocally explain he resigned his trustee position before that meeting occurred, and there is no evidence that he ever served on the board again. This evidence permits only one logical inference—that Barker, Fawcett, McNiel, and Deaton were no longer serving as trustees by the time of the 2010 trustee meeting. *See id.*

As a result, the only unexplained gap in the trustee succession record leading up to the 2010 meeting is the lack of evidence regarding Petry's departure from the board. However, even if we assume Petry was serving as a trustee in 2010 and therefore should have voted on the successor trustees chosen during that meeting, Finegan's and Smith's unanimous votes to appoint Appellants Castro, Dean Paret, and Bradley still constituted "a majority of the remaining members of said trustees selecting, appointing and constituting a successor to fill such vacancies."

After reviewing the summary judgment evidence, we hold the purported gaps TSWC identified in the trustee succession record do not conclusively negate the standing of Appellants Castro, Dean Paret, or Bradley. *See Fernandez*, 315 S.W.3d at 508. Moreover, the summary judgment evidence conclusively shows Castro, Dean Paret, and Bradley were chosen to serve as trustees, as required by the deeds, by "a majority of the remaining members of said trustees selecting, appointing and constituting a successor to fill such vacancies." *See City of Keller*, 168 S.W.3d at 814–15; *see also Laddex*, 513 S.W.3d at 480–82. As a result, the evidence conclusively shows Castro, Dean Paret, and Bradley had standing to file this lawsuit.

We reach the same conclusion as to Appellant Hilderbran. TSWC's only complaint regarding Hilderbran appears to be that he was selected by Smith, Castro, Dean Paret, and Bradley. Because we have already held the evidence conclusively shows those trustees were appointed in accordance with the terms of the controlling deeds, and because their votes to select Hilderbran constituted "a majority of the remaining members of said trustees selecting, appointing and constituting a successor to fill such vacancies," Hilderbran's appointment complied with the terms of the controlling deeds. He therefore had standing to file this lawsuit.

For these reasons, we hold all five Appellants have standing to pursue this lawsuit. *See Laddex*, 513 S.W.3d at 482. To the extent the trial court concluded otherwise, it erred.

*Capacity*

Like its argument that Appellants lacked standing, TSWC's assertion that they lacked capacity centers solely on the validity of their trustee appointments. However, TSWC presented no evidence that any of the five properly appointed successor trustees lack authority to enforce the terms of the 1943 deed. *See Lovato*, 171 S.W.3d at 849. To the contrary, the terms of the 1943 deed indicate that properly appointed trustees are the only people who would have capacity to enforce the terms. *See, e.g.*, *Luckel*, 819 S.W.2d at 463 (we must construe an unambiguous deed

as written). Because Appellants conclusively proved they were appointed in accordance with the terms of the controlling deeds, we hold they also conclusively showed they have capacity to prosecute their trespass to try title action. To the extent the trial court concluded otherwise, it erred.

Having concluded Appellants proved both standing and capacity to prosecute this lawsuit as a matter of law, we turn to the parties' summary judgment arguments on the substance of their claims.

*The Parties' Claims and Defenses*

*Summary Judgment Standard of Review*

We review an order granting no-evidence summary judgment under a legal sufficiency standard, reviewing the evidence in the light most favorable to the non-movant and disregarding all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). We will affirm a no-evidence summary judgment if: "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Id.* at 751 (internal quotation marks omitted); *see also* TEX. R. CIV. P. 166a(i). To defeat a no-evidence motion for summary judgment, the non-movant must present more than a scintilla of evidence to raise a genuine issue of material fact on the challenged issue. *King Ranch*, 118 S.W.3d at 751. "Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact." *Id.* (internal quotation marks omitted).

To be entitled to a traditional summary judgment, the movant must show there are no genuine issues as to any material facts and the movant is therefore entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). "A defendant who conclusively negates at least one of the essential elements

of a cause of action or conclusively establishes an affirmative defense is entitled to [traditional] summary judgment." *Fernandez*, 315 S.W.3d at 508. A plaintiff is entitled to traditional summary judgment on its own affirmative claim if it conclusively proves all essential elements of that claim. *Compass Bank v. Durant*, 516 S.W.3d 557, 565 (Tex. App.—Fort Worth 2017, pet. denied). We consider the evidence in the light most favorable to the non-movant and indulge every reasonable inference in its favor. *Lightning Oil*, 520 S.W.3d at 45.

When both sides move for summary judgment on the same issue and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Tex. Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839, 846 (Tex. 2020). Here, both parties filed multiple summary judgment motions and responses, and expressly incorporated their previously filed arguments and evidence into their later-filed motions and responses.

*Trespass to Try Title Generally*

To prevail on a trespass to try title action, a plaintiff must establish: (1) a regular chain of conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant arising out of a common source; (3) title by adverse possession; or (4) prior possession that has not been abandoned. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994). Here, because both parties' claims to Camp Fawcett arise out of a common source—the 1943 deed—we must determine whether Appellants' asserted interest is superior to TSWC's. *See id.*

Appellants argue the 1943 deed contains a condition subsequent that requires TSWC to manage and operate Camp Fawcett for the benefit of area Boy Scout troops, TSWC failed to comply with this condition, and Appellants' title to Camp Fawcett is superior because they gave TSWC written notice of their intention to re-take the land. In contrast, TSWC argues the evidence shows as a matter of law: (1) the 1943 deed conveyed Camp Fawcett to TSWC in fee simple

absolute, not in fee simple subject to a condition subsequent; and (2) even if the 1943 contains a condition subsequent, that condition has not occurred, so Appellants' interest in the land has not vested. TSWC also filed a no-evidence motion for summary judgment arguing that there is no evidence it breached the condition subsequent.

*Existence of Condition Subsequent*

Neither party has argued the 1943 deed is ambiguous. In construing an unambiguous deed, we "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the [deed], even if different parts of the deed appear inconsistent or contradictory." *Hausser v. Cuellar*, 345 S.W.3d 462, 466 (Tex. App.—San Antonio 2011, pet. denied). We presume the parties to the deed intended to give effect to every clause, interpret the deed so that none of its provisions are rendered meaningless, and give each word and phrase its plain meaning "unless doing so would clearly defeat the parties' intent." *Id.* We may not strike any provision of the deed "unless an irreconcilable conflict exists which causes one part of the deed to destroy another part." *Id.* We look to the intention the parties actually expressed in the language of the instrument, not to any intentions they may have intended but failed to express. *See, e.g.*, *Lindig v. Pleasant Hill Rocky Cmty. Club*, No. 03-15-00051-CV, 2015 WL 5096847, at *2 (Tex. App.—Austin Aug. 28, 2015, pet. denied) (mem. op.). "A deed will pass whatever interest the grantor has in the land, unless it contains language showing the intention to grant a lesser estate." *Eastin v. Dial*, 288 S.W.3d 491, 500 (Tex. App.—San Antonio 2009, pet. denied).

A deed conveys a fee simple subject to a condition subsequent if it imposes a condition on the grantee which, if breached, gives the grantor the right to terminate the grantee's interest. *See Singer v. State*, 391 S.W.3d 627, 632 n.1 (Tex. App.—El Paso 2012, pet. denied); *Field v. Shaw*, 535 S.W.2d 3, 5 (Tex. App.—Amarillo 1976, no writ). The grantor retains a conditional future interest in the land that is triggered by the breach of the condition. *See El Dorado Land Co., L.P.*

*v. City of McKinney*, 395 S.W.3d 798, 800–01 (Tex. 2013). However, if the grantee breaches the condition, title does not automatically revert to the grantor; instead, the grantor must take some affirmative action to terminate the grantee's interest. *Singer*, 391 S.W.2d at 632 n.1. This conditional future interest is sometimes called a right of reentry. *See El Dorado*, 395 S.W.3d at 800–01. A grantor's right of reentry may be tied to restrictions on the grantee's use of the property. *See id.*; *Field*, 535 S.W.2d at 5.

Here, the 1943 deed restates the paragraphs of the 1930 deed labeled FIRST, SECOND, THIRD, and FOURTH. The paragraph labeled FOURTH provides, inter alia, that if the Southwest Texas Council, Boy Scouts of America ceased to function—which occurred at some point in the 1930s—or if the "property shall cease to be used for the purposes herein set forth," then the property "shall be controlled, supervised and managed by [Appellants' predecessors] and utilized for such purpose or purposes as to them seem fit and proper." TSWC argues this provision shows the 1930 deed conveyed a fee simple absolute, not a fee simple subject to a condition subsequent, to Appellants' predecessors. Because the 1943 deed granted TSWC "all the rights and privileges" that the 1930 deed conveyed to Appellants' predecessors, TSWC argues the 1943 deed does not contain a condition subsequent as a matter of law.

However, TSWC's conclusion on this point is inconsistent with the 1943 deed as a whole and renders other provisions of that deed meaningless. *See Owens v. Ousey*, 241 S.W.3d 124, 130 (Tex. App.—Austin 2007, pet. denied); *see also Wenske v. Ealy*, 521 S.W.3d 791, 795 (Tex. 2017). The language upon which TSWC relies appears in the 1943 deed as part of a recitation of what was conveyed to Appellants' predecessors in 1930. Read in isolation, it appears to support TSWC's interpretation. *See Owens*, 241 S.W.3d at 130. But following that recitation, the deed expressly conditions the 1943 conveyance—the conveyance at issue—on TSWC's agreement to:

perform and carry out the foregoing terms and conditions relating to the use of the said lands for the several troops of the Boys Scouts of America now located and to be located within the jurisdiction of what has been heretofore termed the Southwest Texas Council, Boy Scouts of America, and on the further condition that the properties conveyed shall be operated, managed and controlled under the name of Camp Fawcett.

The deed then describes TSWC's agreement to comply with this term as part of the consideration for the 1943 conveyance. It also explicitly provides that if TSWC discontinues the management and control of Camp Fawcett for the use and benefit of the area Boy Scout troops, then TSWC will forfeit its title to the land and that title will revert to the grantors upon written notice of their intention to declare a forfeiture. As a result, even if we assume that the 1930 deed conveyed a fee simple absolute title to Appellants' predecessors, the 1943 deed shows an intention to grant a lesser estate: a fee simple subject to a condition subsequent. *See Eastin*, 288 S.W.3d at 500; *see also El Dorado*, 395 S.W.3d at 800–01. To accept TSWC's construction of the deed, we would have to hold that the 1943 grantors intended to allow TSWC to invalidate the deed's clearly expressed conditions on TSWC's use of the land by simply ignoring those conditions. We may not do so. *See Hausser*, 345 S.W.3d at 466; *see also Hysaw v. Dawkins*, 483 S.W.3d 1, 16 (Tex. 2016) ("Intent must be determined by a careful and detailed examination of the document in its entirety, rather than by application of mechanical rules of construction that offer certainty at the expense of effectuating intent.").

When read in context with the rest of the 1943 deed, we cannot say the isolated provision upon which TSWC relies either irreconcilably conflicts with the rest of the deed or conclusively negates the existence of the condition subsequent. *See Wenske*, 521 S.W.3d at 795; *Hausser*, 345 S.W.3d at 466. Construing the 1943 deed as a whole, we conclude as a matter of law that it contains a condition requiring TSWC to manage and control Camp Fawcett for the use of area Boy Scouts

and giving Appellants the right to terminate TSWC's interest and re-take the land if TSWC fails to comply with that condition. TEX. R. CIV P. 166a(c); *El Dorado*, 395 S.W.3d at 800–01.

We now turn to whether TSWC's challenged actions breached the condition subsequent and triggered Appellants' right to declare a forfeiture and re-take the land.

*Breach of Condition Subsequent*

Appellants first argue that the 2016 and 2017 Baker leases breached the condition subsequent as a matter of law because those leases "transferred exclusive possession and control of the property to Jason Baker." Appellants specifically note the provisions of those leases that give Baker "sole and exclusive right to the hunting and fishing use of" Camp Fawcett. Appellants also note that the leases allowed Baker to access Camp Fawcett year-round and to hunt outside of the fall deer hunting season.

We disagree that the 2016 and 2017 Baker leases are evidence that TSWC relinquished control of Camp Fawcett to Baker. While it is true that both leases give Baker "sole and exclusive right to the hunting and fishing use of" Camp Fawcett and provide he will have "exclusive use" of the property during "whitetail hunting season,"[6] neither lease grants him year-round exclusive use of the property, prohibits Boy Scouts from using the property, or gives Baker discretion to decide whether Boy Scouts may use the property. Instead, both leases reserve TSWC's "right to restrict access on certain weekends for Scouting Event purpose[s] to be decided on a future date." Both leases also note Baker's acknowledgement that he did not have permission to use or access the land during weekends reserved for scouting activities. And although the details differ, the 2016

---

[6] The 2016 Baker lease gives Baker "exclusive use of property during whitetail hunting season between the months of November and January." The 2017 Baker lease repeats this language but adds October to the period of Baker's exclusive use.

and 2017 leases as well as the 2019 amended lease require Baker to notify TSWC before accessing the property and to follow certain rules while he is present on the property.

Appellants' interpretation of the 2016 and 2017 Baker leases renders several provisions of those agreements meaningless. We may not "rewrite the parties' contract or add to or subtract from its language." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 242 (Tex. 2016). The plain language of all three Baker leases shows an intent to retain control of Camp Fawcett for the benefit of area Boy Scouts, not to relinquish that control to Baker. For that reason, the Baker leases are no evidence that TSWC ceased to manage and control Camp Fawcett for the benefit of area Boy Scouts. *See King Ranch*, 118 S.W.3d at 750–51.

Appellants next argue that the 2016 and 2017 Baker leases' reservation of "certain weekends" for scouting use is not enough to avoid a breach of the condition subsequent because "[h]ypothetical use is not the same thing as actual use." They contend that because the 2016 and 2017 Baker leases only reserved weekends for scout use, they rendered Camp Fawcett unavailable to scouts from Monday through Friday for the entire three-year term of the 2017 Baker lease. They also argue the evidence shows "[TSWC] began systematically denying requests from Boy Scout troops to use the camp" after it executed the 2017 Baker lease. As support for this argument, Appellants point to evidence showing TSWC denied three requests from Boy Scout troops that wished to use Camp Fawcett in October of 2017 and January of 2018. TSWC denied those requests on the basis that they fell during deer hunting season. Because Appellants contend those reservation requests fell outside of deer hunting season for Edwards County, they argue this shows TSWC prioritized Baker's access to Camp Fawcett over Boy Scouts' use of the land.

Even when these denied reservation requests are viewed in the light most favorable to Appellants, TSWC conclusively showed they did not constitute a violation of the condition subsequent. TSWC presented uncontroverted evidence that Boy Scout activities such as "Cub Fun

Day," "Paintball Frenzy," "Frontier's Day," and "Spring Cub Camp" took place at Camp Fawcett in May, June, October, and November of 2016; in March, May, June, October, and November of 2017, including at least one Friday; and in April and May of 2018, including on three Fridays. In fact, Appellants' own Exhibit 43 shows a weekend troop activity called "Taste of Adventure" planned for Camp Fawcett in April of 2018. Reasonable people could not disagree that this evidence shows area Boy Scout troops actually used Camp Fawcett throughout the term of the Baker leases, both before and after the three denied reservation requests upon which Appellants rely. *See City of Keller*, 168 S.W.3d at 816. As a result, the evidence conclusively shows the Baker leases did not render Camp Fawcett unavailable for scout use. *See id.*

Moreover, it is undisputed that the 1943 deed gives TSWC broad discretion to lease Camp Fawcett—or even sell it outright—so long as it reinvests the proceeds "in such property as in [TSWC's] judgment may be best suited for a camp site." TSWC's Scout Executive, Koehler, presented uncontroverted testimony that TSWC uses the money it receives from the Camp Fawcett hunting leases, including the Baker leases, to improve and maintain Camp Fawcett. We recognize that uncontroverted evidence from an interested witness is not necessarily conclusive and may present an issue for a factfinder's resolution under some circumstances. *See Song v. Kang*, No. 02-18-00375-CV, 2020 WL 1808487, at *11 (Tex. App.—Fort Worth Apr. 9, 2020, pet. denied) (mem. op.). However, an interested witness's testimony "is taken as true, as a matter of law" if that testimony is "not contradicted by any other witness, or attendant circumstances, and . . . is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990); *see also* TEX. R. CIV. P. 166a(c). Here, because we see nothing in the summary judgment evidence that tends to contradict or cast suspicion on Koehler's testimony regarding TSWC's use of the Baker lease proceeds, we must accept that testimony as true. *See Ragsdale*, 801 S.W.2d at 882. As

a result, even if we assume reasonable people could conclude that the denied reservation requests showed TSWC prioritized Baker's access to Camp Fawcett on those three specific dates, TSWC conclusively proved that its decision to do so complied with the terms of the condition subsequent.

Finally, Appellants argue TSWC failed to maintain Camp Fawcett to the extent that it is no longer appropriate for use by scouts. As support for this assertion, Appellants presented several photographs purportedly showing unsafe or unsanitary conditions, including pictures of a dirty bathroom. They also cited testimony by one of TSWC's expert witnesses, Locke, that the conditions in the photographs might pose a safety hazard if they were present in program areas that are used by scouts. However, Koehler testified that the areas in question, including the dirty bathroom, are located in non-program areas, such as storage areas, that are not used by scouts. He also testified that scouts who attend programs at Camp Fawcett use different bathroom facilities than the ones depicted in Appellants' photos. Additionally, Locke testified that conditions in non-program areas do not present any safety concerns to scouts. She also testified that not every area of a campsite must be accessible to scouts for them to "benefit" from the use of that land. Finally, Koehler testified that the areas depicted in Appellants' photos have since been cleaned and repaired.

Appellants did not present evidence to controvert Koehler's or Locke's testimony that the alleged disrepair did not impact scouts' use of the property, and we see nothing in the summary judgment record that contradicts or casts suspicion on that testimony. *See id.*; *see also* TEX. R. CIV. P. 166a(c). To the contrary, the evidence shows that Appellants Bradley and Hilderbran took the photos of the alleged disrepair on April 21, 2018 and May 19, 2018, days on which scouting events actually occurred at Camp Fawcett. Additionally, both TSWC and Appellants themselves presented evidence that scouting events took place at Camp Fawcett on at least ten other days in April and May of 2018. Under these circumstances, we conclude that we must accept Koehler's

and Locke's testimony about the alleged disrepair's impact on scout use of Camp Fawcett as true. *See Ragsdale*, 801 S.W.2d at 882.

Based on Koehler's and Locke's uncontroverted testimony and both parties' evidence showing that scouts continued to use Camp Fawcett during the period of alleged disrepair, no reasonable person could conclude that TSWC failed to maintain Camp Fawcett to the extent that it is no longer appropriate for use by scouts. *See City of Keller*, 168 S.W.3d at 816. As a result, the trial court did not err by concluding that Appellants' evidence of disrepair did not raise a genuine issue of material fact about whether TSWC had "discontinue[d] the management and control of [Camp Fawcett] for the use and benefit of the" area Boy Scout troops.

After reviewing the summary judgment record, we hold TSWC presented conclusive evidence that it did not cease managing and controlling Camp Fawcett for the benefit of area Boy Scouts. As a result, it was entitled to judgment as a matter of law on Appellants' claims that it breached the condition subsequent in the 1943 Deed. For that reason, the trial court properly granted TSWC's motion for summary judgment on Appellants' trespass to try title claim and denied Appellants' competing motion. TEX. R. CIV. P. 166a(c).

*TSWC's Counterclaim to Quiet Title*

Having concluded TSWC was entitled to summary judgment on Appellants' trespass to try title action, we now turn to whether TSWC was also entitled to traditional summary judgment on its counterclaim to quiet its title to Camp Fawcett. Because TSWC bore the burden on its counterclaim, it was not entitled to traditional summary judgment on that claim unless it conclusively proved all the claim's essential elements. *Compass Bank*, 516 S.W.3d at 565.

A suit to quiet title seeks to remove an encumbrance on the claimant's title and, if successful, renders that encumbrance invalid or ineffective. *Dauz v. Valdez*, 571 S.W.3d 795, 812 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Here, TSWC's counterclaim to quiet title sought

to remove the encumbrance caused by the filing of Appellants' Affidavit of Fact. To be entitled to traditional summary judgment, TSWC was required to show as a matter of law: (1) an interest in Camp Fawcett; (2) its title to the property was affected by the Affidavit of Fact; and (3) Appellants' Affidavit of Fact, though facially valid, was invalid or unenforceable. *Semmler v. Lander*, No. 04-18-00413-CV, 2019 WL 938304, at *3 (Tex. App.—San Antonio Feb. 27, 2019, no pet.) (mem. op.).

The only disputed issue on this point is the validity of Appellants' affidavit. *See id.* On its face, the affidavit shows Appellants filed it in the Edwards County property records solely because they believed TSWC had "failed to manag[e] and control [Camp Fawcett] in a manner which benefits" the area Boy Scout troops. We have already held TSWC was entitled to judgment as a matter of law on this question. That holding mandates a conclusion that Appellants' Affidavit of Fact is invalid as a matter of law. TEX. R. CIV. P. 166a(c); *Compass Bank*, 516 S.W.3d at 565. Because TSWC was entitled to judgment as a matter of law on the only disputed element of its counterclaim to quiet title, we affirm the trial court's traditional summary judgment in its favor on that counterclaim.

*Limitations and Adverse Possession*

TSWC filed a traditional motion for summary judgment on both its limitations defense to Appellants' trespass to try title claim and its assertion that it held title to Camp Fawcett by adverse possession, and Appellants sought no-evidence summary judgment on those issues. Because we have concluded TSWC was entitled to judgment as a matter of law on Appellants' trespass to try title action, we need not analyze the parties' competing motions for summary judgment on TSWC's limitations defense to that claim. *Cline v. Guaranty Bond Bank*, 404 S.W.3d 139, 144 n.7 (Tex. App.—Texarkana 2013, no pet.); *see also* TEX. R. APP. P. 47.1.

However, the trial court's judgment explicitly vests title to Camp Fawcett—presumably, fee simple absolute title—in TSWC. *Cf.* TEX. PROP. CODE ANN. § 5.001(a) ("An estate in land that is conveyed or devised is a fee simple unless the estate is limited by express words or unless a lesser estate is conveyed or devised by construction or operation of law."); *Trial v. Dragon*, 593 S.W.3d 313, 322 (Tex. 2019) ("[C]ourts will construe a deed to confer upon the grantee the greatest estate that the terms of the instrument allow."). As a result, we must determine whether the trial court erred by granting TSWC's motion for summary judgment on its adverse possession claim and denying Appellants' competing motion on that issue.

*Applicable Law*

"[T]o establish a claim for adverse possession, a claimant must prove: (1) actual possession of the disputed property, (2) that is open and notorious, (3) peaceable, (4) under a claim of right[,] (5) that is consistently and continuously adverse or hostile to the claim of another person for the duration of the relevant statutory period." *Hardaway v. Nixon*, 544 S.W.3d 402, 408 (Tex. App.—San Antonio 2017, pet. denied). The claimant's possession of the land must be "actual, visible, continuous, notorious, distinct, hostile, and of such [a] character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *Terrill v. Tuckness*, 985 S.W.2d 97, 107 (Tex. App.—San Antonio 1998, no pet.).

*Application*

In its motion for summary judgment, TSWC argued Appellants' trespass to try title action accrued—and, by extension, TSWC's adverse possession claim began to run—when TSWC first started closing Camp Fawcett during hunting season in the mid-2000s. In their competing motion, Appellants argued there was no evidence their trespass to try title claim accrued before November of 2019, when TSWC refused to surrender Camp Fawcett in response to Appellants' attempt to exercise their right of reentry.

As a matter of law, TSWC's adverse possession claim did not begin to run until TSWC took action that was hostile to or inconsistent with Appellants' contingent future interest. *See Hardaway*, 544 S.W.3d at 408; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.024 (three-year limitations period); *id.* § 16.025 (five-year limitations period); *id.* § 16.026 (ten-year limitations period). As explained above, a grantor's contingent future interest in property conveyed subject to a condition subsequent does not automatically revert to the grantor when the condition is breached. *See Singer*, 391 S.W.2d at 632 n.1. Instead, the grantor must take some affirmative action to claim that interest. *Id.* Here, the 1943 deed expressly provides that Appellants' contingent future interest does not vest until: (1) TSWC "discontinue[s] the management and control of the properties here conveyed for the use and benefit of the beneficiaries named in the original trust conveyance or in this instrument"; *and* (2) Appellants give TSWC written notice "of their intention to declare such forfeiture and re-acquire and re-take possession of the said trust estate." As a result, even if we assume TSWC breached the condition subsequent by closing Camp Fawcett during hunting season, its possession of Camp Fawcett did not "indicate unmistakably an assertion of a claim" inconsistent with Appellants' contingent future interest until Appellants presented TSWC with written notice of their intention to claim that interest and TSWC refused to surrender the land. *See Terrill*, 985 S.W.2d at 107.

It is undisputed that Appellants did not send TSWC written notice of their intention to declare a forfeiture until November of 2019. Appellants filed this lawsuit the same month. As a result, there is no evidence that TSWC's possession of the land was hostile to Appellants' claim "for the duration of the relevant statutory period." *Hardaway*, 544 S.W.3d at 408; *Terrill*, 985 S.W.2d at 107; *see also* TEX. CIV. PRAC. & REM. CODE §§ 16.024, 16.025, 16.026. The trial court therefore should have granted Appellants' no-evidence summary judgment motion on TSWC's

adverse possession claim and denied TSWC's traditional motion for summary judgment on that issue. TEX. R. CIV. P. 166a(i).

*Title to Camp Fawcett*

As noted above, the trial court's judgment explicitly notes that title to Camp Fawcett "is vested in" TSWC. The judgment does not indicate whether the trial court's award was based on its adverse possession claim, its contention that the 1943 deed does not contain a condition subsequent, or its counterclaim to quiet title. Because we have already held that Appellants were entitled to summary judgment on both TSWC's adverse possession claim and on the existence of the condition subsequent, we may not affirm the portion of the trial court's judgment vesting title in TSWC on those grounds. TEX. R. CIV. P. 166a(c), (i).

Although we have affirmed the trial court's summary judgment for TSWC on its counterclaim to quiet title, the only encumbrance TSWC challenged by that counterclaim was Appellants' Affidavit of Fact. TSWC's motion for summary judgment did not argue that the existence of the condition subsequent was an encumbrance that could be removed by judgment in its favor on that counterclaim. *See Stiles v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) (summary judgment may not be affirmed on ground not raised in motion). Although TSWC argued the condition subsequent did not exist at all, we have already rejected that argument. Because the condition subsequent in the 1943 deed remains operative, the trial court was only permitted to award TSWC "the greatest estate that the terms of [the 1943 deed] allow"—i.e., fee simple subject to a condition subsequent. *Cf. Trial*, 593 S.W.3d at 322; *see also El Dorado*, 395 S.W.3d at 800–01. We therefore modify the trial court's judgment to provide that TSWC's title remains subject to the condition subsequent described in the controlling deeds.

**CONCLUSION**

We affirm the trial court's evidentiary rulings. We reverse the trial court's December 9, 2019 Order Denying Plaintiffs' First Amended Traditional Motion for Summary Judgment solely as to the existence of the condition subsequent in the 1943 deed and render judgment granting Plaintiffs' First Amended Traditional Motion for Summary Judgment as to the existence of the condition subsequent only. We reverse the trial court's December 9, 2019 order denying Plaintiffs' No Evidence Motion for Summary Judgment on Defendant's Affirmative Defenses and Adverse Possession Claim as to TSWC's Adverse Possession Claim, and we render judgment granting that motion as to TSWC's adverse possession claim. We modify the trial court's December 9, 2019 order granting TSWC's Traditional and No Evidence Motion for Summary Judgment to specify that TSWC holds title to Camp Fawcett in fee simple subject to a condition subsequent and affirm that order as modified.

Beth Watkins, Justice